UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------x
IN RE AMERICAN INTERNATIONAL          )
GROUP, INC. 2007 DERIVATIVE           )   Lead Case No. 07-CV-10464 (LAP)
LITIGATION                            )
                                      )
_____ )
                                      )
This Document Related To:             )
                                      )
ALL ACTIONS                           )
                                      )
-----------------------------------------------------------------x
```

## MEMORANDUM OF LAW IN SUPPORT OF
## THE OUTSIDE DIRECTORS' MOTION TO DISMISS

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT..................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

      A.    Allegations Relating To False And Misleading Statements ................................. 3

      B.    Allegations Relating To Intent.................................................................. 6

LEGAL STANDARD ................................................................................................. 7

ARGUMENT ......................................................................................................... 8

I.     The Complaint Does Not Allege That AIG Made A False or Misleading
Statement ..................................................................................................... 8

II.    The Complaint Does Not Allege Intent .......................................................... 9

      A.    The Complaint Fails To Allege The *Scienter* Required To Sustain A Claim
For Violation of The Federal Securities Laws .................................................. 10

            1.    Plaintiffs Have Not Alleged Motive And Opportunity............................ 10

            2.    Plaintiffs Have Not Alleged Conscious Misbehavior Or
Recklessness .................................................................................. 12

      B.    The Complaint Does Not Allege That The Outside Director Defendants
Consciously Breached Their Fiduciary Duty....................................................... 13

III.   The Complaint Fails To State A Claim For Insider Selling............................. 16

IV.   The Complaint Fails To State A Claim For Corporate Waste As A Matter Of Law ....... 16

V.    The Complaint Fails to State A Claim For Unjust Enrichment....................................... 18

CONCLUSION ....................................................................................................... 19

i

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Aboushanab v. Janay*, No. 06 Civ. 13472, 2007 WL 2789511
(S.D.N.Y. 2007)..................................................................................... 7

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995)........................ 12

*Alidina v. Internet.com Corp.*, No. 17235-NC, 2002 WL 31584292
(Del. Ch. Nov. 6, 2002).......................................................................... 17

*Andreae v. Andreae*, No. 11905, 1992 WL 43924 (Del. Ch. Mar. 3,
1992) ....................................................................................................... 17

*Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509 (W.D.N.Y.
2007) ................................................................................................... 7, 10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir.
2007) ................................................................................................... 3, 7

*Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955 (2007)........................... 7

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ........................................... 17

*Canadian Comm. Workers Indus. Pension Plan v. Alden*, No. Civ.
A. 1184-N, 2006 WL 456786 (Del. Ch. Feb. 22, 2006) ........................ 15

*Chill v. General Elec. Co.*, 101 F.3d 263 (2d Cir. 1996)........................... 10

*Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007)................................ 16

*Elliott Assocs., L.P. v. Hayes*, 141 F. Supp. 2d 344 (S.D.N.Y.
2000) ....................................................................................................... 13

*ePlus Group, Inc. v. Panoramic Commc'ns, L.L.C.*, No. 02 Civ.
7992, 2003 WL 21512229 (S.D.N.Y. July 2, 2003) .............................. 15

*Ferre v. McGrath*, No. 06 Civ. 1684, 2007 WL 1180650 (S.D.N.Y.
Feb. 16, 2007).......................................................................................... 14

*Freedom Holdings, Inc. v. Spitzer*, 363 F.3d 149 (2d Cir. 2004)................ 7

*Golden Pacific Bancorp. v. F.D.I.C.*, 375 F.3d 196 (2d Cir. 2004)............ 18

*Green v. Phillips*, No. 14436, 1996 WL 342093 (Del. Ch. June 19,
1996) ....................................................................................................... 17

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) .........................................................14, 15, 16

*In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549
(S.D.N.Y. 2004)....................................................................................................... 11

*In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959 (Del. Ch.
2008) ................................................................................................................ 10, 14

*In re Forest Labs., Inc. Derivative Litig.*, 450 F. Supp. 2d 379 (Del.
Ch. 2006)................................................................................................................ 14

*In re IAC/Interactivecorp Sec. Litig.*, 478 F. Supp. 2d 574
(S.D.N.Y. 2007)....................................................................................................... 14

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364
(S.D.N.Y. 2006)....................................................................................................... 12

*In re Northern Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446
(S.D.N.Y. 2000)....................................................................................................... 11

*Jones ex rel. CSK Auto Corp. v. Jenkins*, 503 F. Supp. 2d 1325 (D.
Ariz. 2007)............................................................................................................. 16

*Kahn v. Roberts*, 679 A.2d 460 (Del. 1996) ............................................................... 17

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ........................................................... 12

*Kenney v. Koenig*, 426 F. Supp. 2d 1175 (D. Colo. 2006) ........................................... 15

*Kinsey v. Cendant Corp.*, No. 04 Civ. 0582, 2005 WL 1907678
(S.D.N.Y. 2005)....................................................................................................... 12

*Landy v. D'Alessandro*, 316 F. Supp. 2d 49 (D. Mass. 2004) ...................................... 17

*Leeds v. Meltz*, 85 F.3d 51 (2d Cir. 1996) ................................................................... 7

*Luce v. Edelstein*, 802 F.2d 49 (2d Cir. 1986) ............................................................. 9

*McCabe v. Foley*, 424 F. Supp. 2d 1315 (M.D. Fla. 2006) ......................................... 15

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993)....................................... 9

*Mishkin v. Ageloff*, No. 97 Civ. 2690, 1998 WL 651065 (S.D.N.Y.
Sept. 23, 1998)......................................................................................................... 9

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ..................................................... 10, 12

*Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323 (Del.
Ch. Sept. 30, 2003) ............................................................................................ 14, 16

*Rist v. Stephenson*, No. 05-CV-02826, 2007 WL 2914252 (D. Colo. Oct. 1, 2007) ................................................................................................ 14

*Ronconi v. Larkin¸* 253 F.3d 423 (9th Cir. 2001) ........................................................ 11

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) ......................................................... 12

*Salsitz v. Nasser*, 208 F.R.D. 589 (E.D. Mich. 2002) ................................................ 14

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris*, 75 F.3d 801 (2d Cir. 1996) ...................................................................... 13

*Shaev v. Armstrong*, No. Civ. A. 1449-N, 2006 WL 391931 (Del. Ch. Feb. 13, 2006), *aff'd,* 2006 WL 3190507 (Del. 2006) ................................... 15

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) ............................ 9, 10

*Stone v. Ritter*, 911 A.2d 362 (Del. 2006) ............................................................ 14, 15

*Teachers' Ret. Sys. v. Aidinoff*, 900 A.2d 654 (Del. Ch. 2006) ................................. 14

*Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162 (4th Cir. 2007) .................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ........................................................................................................... 9, 10

*The High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420 (S.D.N.Y. 1998) ............................................................................................................... 13

*Walton v. Morgan Stanley & Co.,* 623 F.2d 796 (2d Cir. 1980) .................................. 7

*Wischmeyer v. Wischmeyer*, No. 05-CV-6134T, 2006 WL 2433414 (W.D.N.Y. Aug. 21, 2006) ...................................................................................... 13

## Statutes and Rules

15 U.S.C. § 10(b) ..............................................................................................8, 10, 13

15 U.S.C. § 20(a) ........................................................................................................... 8

15 U.S.C. § 87u-4, *et seq.* ........................................................................................... 10

17 C.F.R. § 240.10b-5 ......................................................................................8, 10, 13

Fed. R. Civ. Proc. 12(b)(6) ........................................................................................ 1, 7

Fed. R. Civ. Proc. 9(b) ................................................................................................... 9

Defendants Marshall A. Cohen, Martin D. Feldstein, Ellen V. Futter, Richard C. Holbrooke, Frank G. Zarb, Stephen L. Hammerman, George L. Miles, Morris W. Offit, Michael H. Sutton, Fred H. Langhammer, James F. Orr, Virginia M. Rometty, and Robert B. Willumstad (the "Outside Director Defendants"),[1] by and through their attorneys Simpson Thacher & Bartlett LLP, respectfully submit this memorandum of law, together with the Affidavit of Tamala T. Boyd,[2] sworn to on April 15, 2008, in support of their motion to dismiss Plaintiffs' Verified Consolidated Shareholder Derivative Complaint, dated February 15, 2008 ("Complaint"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants incorporate by reference the motion to dismiss for failure to make a demand ("AIG Motion to Dismiss") submitted on behalf of American International Group, Inc. ("AIG" or the "Company").

## PRELIMINARY STATEMENT

AIG has moved the Court to dismiss the Complaint for failure to make a demand. *See* AIG Motion to Dismiss. The Outside Director Defendants agree that the Court can dismiss the Complaint on that basis alone. For the reasons set forth below, even if the Court does not dismiss for failure to make a demand, the Complaint should be dismissed.

Plaintiffs allege six causes of action against the Outside Director Defendants. All six are based on a single factual premise: AIG made false or misleading public disclosures relating to its exposure to the sub-prime mortgage market. But Plaintiffs have not made

---

[1]    The Complaint names as defendants 15 AIG directors ("Director Defendants"). Two of the director defendants—Martin Sullivan and Edmund Tse (the "Inside Director Defendants")—are also officers of AIG. The remaining thirteen director defendants are outside directors of AIG.

[2]    All citations to "Ex. __" refer to exhibits to the Affidavit of Tamala T. Boyd.

1

allegations that could possibly support a conclusion that any AIG public disclosure was false or misleading. Therefore, the Complaint is insufficient as a matter of law and should be dismissed.

Even if Plaintiffs had alleged a misstatement or omission—which they have not—all of the causes of action should be dismissed for failure to allege other required elements. Three of Plaintiff's causes of action—two for breach of the federal securities laws and one for failing to oversee AIG's public disclosures—require that Plaintiffs allege with particularity that the Outside Director Defendants acted intentionally. Plaintiffs have not even attempted to do so. Plaintiffs do not make any allegations that the Outside Director Defendants knew or consciously disregarded one single piece of information that related directly to AIG's exposure to the subprime mortgage market. The limit of Plaintiffs' allegations regarding intent is that a number of media outlets began publishing articles about the general state of the subprime mortgage market in late 2006. This is nowhere close to meeting the high pleading standards imposed on claims for violation of the federal securities laws or for breaching the fiduciary duty of oversight. Plaintiffs remaining claims also fail to allege the basic elements necessary to survive a motion to dismiss.

AIG is currently navigating the difficult subprime mortgage market, as is nearly every other major financial institution in the U.S. and Europe. Like most of those institutions, it has made numerous announcements regarding its exposure, which have changed as the market has rapidly changed. All AIG has done is to report accurately, transparently, and quickly on its liabilities relating to the subprime mortgage market. Plaintiffs have no cause of action for that. This case should be dismissed.

## STATEMENT OF FACTS[3]

### A.     Allegations Relating To False And Misleading Statements

Plaintiffs include in their Complaint approximately 22 pages of excerpts from various AIG public filings made between May 10, 2006 and August 8, 2007 ("Pre-November 2007 Statements").  The chart attached as Exhibit A lists AIG's public filings during that period and sets forth the statements in those filings that are relevant to the issues that Plaintiffs claim were improperly disclosed.  *See* Ex. A.  In summary, Plaintiffs allege that the Company was aware of the "evolving market and regulatory developments affecting non-prime mortgage lending."  Compl. ¶72.  Further, the Pre-November 2007 Statements disclose that the Company's mortgage business experienced increases in profit, but, at the same time, was "adversely affected by the continued slowdown in the U.S. residential real estate market."  *Id.* at ¶¶68-78.  Regarding AIG's business prospects, the Pre-November 2007 Statements disclose the Company's belief in the strength and diversification of its portfolios and business lines.  *Id.* at ¶¶69-71.  Each of the Pre-November 2007 Statements contained cautionary language alerting investors that forward looking statements should not be relied upon.  *See, e.g.*, May 10, 2006 AIG Earnings Release, Ex. A.[4]

---

[3]     Solely for purposes of this Motion to Dismiss, the Outside Director Defendants set forth as true the allegations in the Complaint, as they are assumed to be under the motion to dismiss standard.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007) ("The following facts are taken from ATSI's complaints and supporting documents, which we must assume to be true in reviewing a Fed. R. Civ. P. 12(b)(6) dismissal."); *see also* p. 6, *infra.*

[4]     Because the Public Statements were incorporated into the Complaint, the Court may consider them *in toto*.  *ATSI*, 493 F.3d at 98 ("[W]e may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.").

Plaintiffs allege these public statements were "improper" because: "(a) AIG's portfolios were more exposed to the subprime mortgage crisis than what the Company had disclosed; (b) AIG's mortgage insurance business was experiencing losses as a result of the subprime mortgage crisis; and (c) as a result of the foregoing, AIG's reported business prospects for its fiscal year 2007 were inaccurate." Compl. ¶86. As the sole basis for their contention that the Pre-November 2007 Statements were "improper," Plaintiffs assert that excerpts from select disclosures made between November 7, 2007 and February 11, 2008 ("Post-November 2007 Statements") "cast doubt on" the Pre-November 2007 Statements. *Id.* at ¶¶79-84 ("The Truth Is Revealed").

The Post-November 2007 statements include three disclosures: (1) a November 7, 2007 press release reporting company losses to date ("November 7 Release"); (2) statements made by certain employee defendants at a December 5, 2007 investor meeting ("December 5 Release"); and (3) the Company's February 11, 2008 securities filing on Form 8K ("February 11 Release"). *Id.* at ¶¶79-84. The November 7 Release reported financial results for that quarter, including losses in AIG's investment and credit-swap portfolios and its insurance business, all deriving from "a volatile market environment that challenged many financial institutions." *Id.* at ¶79. The November 7 Release also reported that, "[w]hile U.S. residential mortgage and credit market conditions adversely affected [AIG's] results, [AIG's] active and strong risk management processes helped contain the exposure." *Id.*

The December 5 Release expressed confidence in the Company's diversification and in its "marks and the reasonableness of [its] valuation methods." *Id.* at ¶80. Defendants warned, however, that although "we have . . . a high degree of certainty in what we have booked to date," the Company "cannot predict the future." *Id.*

4

The February 11 Release disclosed that AIG would "clarify and expand its prior disclosures relating to the methodology and data inputs used to determine the fair values of the super senior credit default swap portfolio in respect of multi-sector collateralized debt obligations." The Complaint incorrectly asserts that the February 11 Release states that AIG would "alter the way it valued credit default-swaps involving CDO's." The February 11 Release does not state that the valuation methodology would be altered. Rather, it states that the purpose of the filing was "to clarify the pricing methodology and data inputs used" and then explains how certain aspects of the methodology would likely be applied in the Form 10K filing AIG would make relating to the year ended December 31, 2007. *See* Ex. B.

The Complaint also incorrectly asserts that the February 11 Release states that AIG's independent auditors "found faulty accounting may have understated the Company's losses on some holdings" and that "AIG's internal valuation methods . . . were seriously flawed." Compl. ¶¶83, 84. Both of these allegations are inaccurate. The sole statement regarding the auditor's findings is:

> AIG has been advised by its independent auditors, PricewaterhouseCoopers LLC, that they have concluded that at December 31, 2007, AIG had a material weakness in its internal control over financial reporting and oversight relating to the fair value valuation of the AIGFP super senior credit default swap portfolio. AIG's assessment of its internal controls relating to the fair value valuation of the AIGFP super senior credit default swap portfolio is ongoing, but AIG believes that it currently has in place the necessary compensating controls and procedures to appropriately determine the fair value of AIGFP's super senior credit default swap portfolio for purposes of AIG's year-end financial statements.

*See* Ex. B.

A material weakness is defined as "a deficiency, or a combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of AIG's annual or interim financial statements will not be prevented or detected on a timely basis." *See* AIG's Annual Report Filed on Form 10K for the period ending

December 31, 2007 at 202 (Item 9A).  Neither the independent accountants nor AIG

management reached the conclusion that there had been any past error in AIG's financial reports.

Nor did the independent accountants state that the valuation methodology employed by AIG was

"seriously flawed."

In describing the relationship between the Pre-November 2007 Statements and the

Post-November 2007 Statements, the Complaint states only that "[t]he [Post-November 2007

Statements] *cast doubt* on AIG's [Pre-November 2007 Statements] statements that the Company

did not face any significant problems stemming from the ongoing credit crisis and also raised

concerns that AIG will report further losses."  Compl. ¶83 (emphasis supplied).  The Complaint

does not allege *how* the Post-November 2007 Statements show that the Pre-November 2007

Statements were false and misleading.

### B.    Allegations Relating To Intent

Plaintiffs make only one allegation with regard to intent that relates specifically to

AIG: that in November 2006, Defendant Cohen sold AIG shares.  *Id.* ¶91.

Plaintiffs' remaining allegations as to what the Outside Director Defendants knew

or should have known relate to media reports about the subprime market generally or to small

companies unrelated to AIG:

- In August 2006, problems in the subprime mortgage marketplace "began gaining national media attention," and in December 2006, unspecified "national publications such as the *Wall Street Journal* reported that subprime mortgage delinquencies were mounting."  *Id.* ¶¶52, 54.

- Later in 2006 and in early 2007, the 15th and 16th largest subprime mortgage lenders, as well as another even smaller entity—all companies, unlike AIG, that were "concentrated on the subprime sector"—filed for bankruptcy protection.  *Id.* ¶¶55-56.

- About the same time, two other companies involved in subprime mortgage lending restated their financials.  *Id.* ¶¶57-58.  Later in 2007, a handful of other companies that either issued subprime mortgages or hedged subprime-related

securities issued public statements announcing that the downturn in the subprime marketplace was adversely affecting their business. *Id.* ¶¶59-62.

## LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept as true all factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff. *Freedom Holdings, Inc. v. Spitzer*, 363 F.3d 149, 151 (2d Cir. 2004). Plaintiffs must plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007); *Apace Commc'ns, Ltd. v. Burke*, 522 F. Supp. 2d 509, 515 (W.D.N.Y. 2007). Although the pleading standard is a liberal one, "plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65; *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("[B]ald assertions and conclusions of law will not suffice."). The complaint must provide factual allegations sufficient to raise a right to relief above the level of speculation. *Twombly*, 127 S. Ct. at 1965; *ATSI*, 493 F.3d at 98.

AIG is a Delaware corporation. Compl. ¶11. Therefore, the claims for breach of fiduciary duty, waste of corporate assets, and unjust enrichment are governed by Delaware law. *Walton v. Morgan Stanley & Co.,* 623 F.2d 796, 798 n.3 (2d Cir. 1980) ("New York law dictates that the law of the state of incorporation governs an allegation of breach of fiduciary duty owed to a corporation."); *Aboushanab v. Janay*, No. 06 Civ. 13472, 2007 WL 2789511, at *4 (S.D.N.Y. 2007) ("Delaware law regulates the internal affairs between a corporation, incorporated in Delaware, and the holders of securities of that corporation.").

## ARGUMENT

**I.    The Complaint Does Not Allege That AIG Made A False or Misleading Statement**

The Complaint has six counts:

**Count I**    –    alleges violations of Section 10(b) of the Securities Exchange Act of 1934 and of Securities and Exchange Commission Rule 10b-5. Plaintiffs allege that the Outside Director Defendants and others "disseminated or approved" misleading statements. Plaintiffs allege that those false statements artificially inflated the price of AIG stock.

**Count II**    –    alleges control person liability under Section 20(a) of the Securities Exchange Act of 1934 for permitting the violations of Rule 10b-5 alleged in Count I.

**Count III**    –    alleges breach of fiduciary duty because the Outside Director Defendants had "actual or constructive knowledge that they had caused [AIG] to improperly represent [AIG's] business prospects and financial results."

**Count IV**    –    alleges that Outside Director Defendant Cohen (and certain insiders) improperly sold stock at a time when AIG's "revenues were materially overstated" due to the failure to properly disclose AIG's exposure to the subprime mortgage market.

**Count V**    –    alleges waste of corporate assets because the Outside Director Defendants permitted AIG to repurchase its shares at a price that was inflated because AIG had not properly disclosed its exposure to the subprime mortgage market.

**Count VI**    –    alleges unjust enrichment by accepting compensation and benefits while engaged in the conduct described in Counts I – V.

Each of these counts requires that Plaintiffs allege that AIG made a false or misleading statement. Plaintiffs have not done so. Plaintiffs have stated in conclusory fashion that the Post-November 2007 Statements "cast doubt" on the propriety of the Pre-November 2007 Statements without explaining how that is so. But nothing in the Post-November 2007 Statements says, indicates, or even implies that the Pre-November 2007 Statements were incorrect. AIG has not restated any prior financial statements. AIG has not issued a correction of any of the Pre-November 2007 Statements. The Complaint does not even attempt to identify a particular statement that was inaccurate or misleading. Nor does it attempt to explain why any

8

statement AIG made was false or misleading. The Complaint says only that the Post-November

2007 Statements "cast doubt on" the Pre-November 2007 statements. That is not enough to

sustain a claim.

Allegations that a company's disclosures are false or misleading sound in fraud

and must therefore satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil

Procedure. *Mishkin v. Ageloff*, No. 97 Civ. 2690, 1998 WL 651065, at *20 (S.D.N.Y. Sept. 23,

1998) (holding that Section 10(b) claims such as Count I are subject to Rule 9(b)); *Luce v.

Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986). Rule 9(b) requires the circumstances constituting the

fraud to be alleged with particularity. Fed. R. Civ. P. 9(b). Accordingly, Plaintiffs are required

to: "(1) specify the statements that [they] contend[] were fraudulent, (2) identify the speaker, (3)

state where and when the statements were made, and (4) explain why the statements were

fraudulent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127-28 (2d Cir. 1994) (quoting

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); *see also Mishkin*, 1998 WL

651065, at *20. Conclusory statements are insufficient as a matter of law. *Shields*, 25 F.3d at

1129. Plaintiffs have made no such particularized allegations here. As such, the Complaint does

not adequately allege that any statement by AIG was false or misleading. Because all of the

Counts in the Complaint require proof that AIG made a false or misleading statement, all of the

Counts should be dismissed.

## II.    The Complaint Does Not Allege Intent

Counts I and II are federal securities law claims, which require Plaintiffs to allege

facts sufficient to support a finding of *scienter* that is "cogent and at least as compelling as any

opposing inference of non-fraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127

S. Ct. 2499, 2504-05 (2007). Count III is a claim that the Outside Director Defendants failed to

properly oversee AIG's financial reporting and requires that Plaintiffs allege that the Directors

"either lacked good faith in the exercise of their monitoring responsibilities or conscientiously permitted a known violation of law by the corporation to occur." *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 972 (Del. Ch. 2008). Plaintiffs have not come close to satisfying either standard.

### A.    The Complaint Fails To Allege The *Scienter* Required To Sustain A Claim For Violation of The Federal Securities Laws

Section 10(b) and Rule 10b-5 claims require Plaintiffs "to allege facts that give rise to a strong inference of fraudulent intent." *Shields*, 25 F.3d at 1128; *see also Chill v. General Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996). The Supreme Court, interpreting the "strong inference" requirement in a recent Rule 10b-5 class action case under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 87u-4, *et seq.*, explained that to satisfy the "strong inference" test, a plaintiff "must plead facts rendering an inference of scienter *at least as likely* as any plausible opposing inference." *Tellabs*, 127 U.S. at 2513 (emphasis in original).[5] A "strong inference" can be shown either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields*, 25 F.3d at 1128; *see also Chill*, 101 F.3d at 267; *Apace*, 522 F. Supp. 2d at 515. Plaintiffs have failed to allege facts that would support any inference of *scienter.*

### 1.    Plaintiffs Have Not Alleged Motive And Opportunity

Allegations of "motive and opportunity" will only suffice if they reveal that defendants "benefited in some concrete and personal way from the purported fraud." *Novak v. Kasaks*, 216 F.3d 300, 307-308 (2d Cir. 2000). The sole assertion of a concrete personal benefit

---

[5]    The *Tellabs* Court noted that the PSLRA adopted the Second Circuit's "strong inference" standard. 127 S. Ct. at 2509. Therefore, Plaintiffs cannot escape this pleading standard by filing their Rule 10b-5 claim as a derivative action rather than as a class action.

to any Outside Director Defendant is that Defendant Marshall Cohen sold 10,093 shares of AIG

stock on November 28, 2006. Compl. ¶91. But insider "stock sales, standing alone, are

insufficient to support a strong inference of fraudulent intent." *In re Bristol-Myers Squibb Sec.*

*Litig.*, 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004). Courts recognize that insiders may sell stock

for many reasons other than fraud. *Ronconi v. Larkin¸* 253 F.3d 423, 435 (9th Cir. 2001). Only

stock sales that are "unusual" in amount and timing are probative of fraudulent intent. *See, e.g.,*

*Id.; Teachers' Ret. Sys. v. Hunter*, 477 F.3d 162, 183 (4th Cir. 2007); *In re Northern Telecom*

*Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 463 (S.D.N.Y. 2000).

       Plaintiffs have not alleged that the single sale by Mr. Cohen in November 2006

was unusual in either amount or timing. The Complaint, as noted above, does not make *any*

allegations regarding AIG's specific exposure to subprime mortgage losses *at any time,* let alone

in November of 2006. The only allegations Plaintiffs make regarding the period prior to

November 2006 are general macroeconomic statements such as, "in August 2006, the volatility

in the market leading to the subprime disaster began gaining national media attention," that

unspecified "major Wall Street institutions" began reporting losses in income, and that the

Federal Reserve raised the federal funds rate between May and October 2006. Compl. ¶52, 53.

In addition to being general economic data not specific to AIG, all of this information was, of

course, public. It cannot possibly indicate that Mr. Cohen was somehow improperly trading on

inside information in November 2006. Moreover, Mr. Cohen is the only Outside Director

Defendant alleged to have improperly sold shares, and only four of the 23 officer and director

defendants are alleged to have improperly sold stock during the relevant period. That only a

small number of insiders who allegedly had access to non-public information sold shares during

the relevant period weighs against a finding of *scienter. Acito v. IMCERA Group, Inc.*, 47 F.3d

11

47, 54 (2d Cir. 1995). Accordingly, Mr. Cohen's stock sales do not raise any inference of *scienter* with respect to Mr. Cohen. Plaintiffs make no substantive "motive and opportunity" allegations against any other Outside Director Defendant.

### 2. Plaintiffs Have Not Alleged Conscious Misbehavior Or Recklessness

Negligence is insufficient to show "strong circumstantial evidence of conscious misconduct or recklessness." The caliber of the reckless behavior must be "highly unreasonable, representing an extreme departure from the standard of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000) (internal quotations omitted). This standard is even more difficult to meet where, as here, a plaintiff has made no showing of "motive and opportunity." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).

Plaintiffs attempt to assert that the Outside Director Defendants should have been aware that AIG's disclosures did not accurately reflect AIG's exposure to the subprime market because of their positions as directors. *See, e.g.,* Compl. ¶¶ 22-34. Such allegations are insufficient as a matter of law. *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 406 (S.D.N.Y. 2006); *Kinsey v. Cendant Corp.*, No. 04 Civ. 0582, 2005 WL 1907678, at *5 (S.D.N.Y. 2005). "Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information." *Novak*, 216 F.3d at 309. Plaintiffs make no allegations at all regarding specific information about AIG received by the Outside Director Defendants. Plaintiffs' sole allegations regarding information about the subprime mortgage market relate to "media reports" which Plaintiffs do not allege that the Outside Director Defendants read. Nor do Plaintiffs allege how those reports would have indicated to the Outside Director Defendants that AIG's disclosures regarding subprime mortgage exposure were in any way inaccurate. Lacking such allegations, Plaintiffs' Complaint

should be dismissed. *See, e.g., San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris*, 75 F.3d 801, 813 (2d Cir. 1996) ("Plaintiffs do not . . . enjoy a license to base claims of fraud on speculation and conclusory allegations.") (internal quotations omitted); *Wischmeyer v. Wischmeyer*, No. 05-CV-6134T, 2006 WL 2433414, at *5 (W.D.N.Y. Aug. 21, 2006) (finding "Plaintiff's allegations of deceptive motive to be too generalized to support the required strong inference that the defendants acted with an intent to deceive, manipulate, or defraud.").

*    *    *

Plaintiffs have failed to allege the necessary intent to sustain a claim under Section 10(b) or Rule 10b-5, and Count I should be dismissed. Count II is a control person claim, which is predicated on the Plaintiffs establishing liability under Count I. As such, Count II should also be dismissed. *Elliott Assocs., L.P. v. Hayes*, 141 F. Supp. 2d 344, 360-361 (S.D.N.Y. 2000) ("Because plaintiffs have not properly pled a primary violation of the federal securities laws, their derivative claim for controlling person liability under section 20(a) must be dismissed."); *see also The High View Fund, L.P. v. Hall*, 27 F. Supp. 2d 420, 428 (S.D.N.Y. 1998).

### B.    The Complaint Does Not Allege That The Outside Director Defendants Consciously Breached Their Fiduciary Duty

Count III alleges that defendants breached their duty to provide proper oversight of AIG's financial reporting function by permitting AIG to make allegedly false or misleading public statements. Even if Plaintiffs had properly alleged a false or misleading statement, their claim for breach of fiduciary duties would fail because they have not met the other pleading requirements set forth in *Caremark*.

A claim that directors permitted the company to make false or misleading public statements is an "oversight" claim subject to the *Caremark* standard. *See, e.g., In re Forest Labs., Inc. Derivative Litig.*, 450 F. Supp. 2d 379, 395 (Del. Ch. 2006) (finding the claim that defendants failed to prevent the dissemination of press releases containing misleading statements a *Caremark* claim); *Rist v. Stephenson*, No. 05-CV-02826, 2007 WL 2914252, at *4-5 (D. Colo. Oct. 1, 2007) (finding plaintiffs' claim, premised on the Outside Directors' "causing or allowing" the release of improper information in the company's press releases and SEC filings and failing to prevent and correct the dissemination of such information," a *Caremark* claim) (internal citations omitted).

Establishing director liability for failure to monitor corporate affairs is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *In re IAC/Interactivecorp Sec. Litig.*, 478 F. Supp. 2d 574, 605 (S.D.N.Y. 2007) (quoting with approval *Caremark*, 698 A.2d at 967); *Ferre v. McGrath*, No. 06 Civ. 1684, 2007 WL 1180650, at *8 (S.D.N.Y. Feb. 16, 2007) (same); *Stone v. Ritter*, 911 A.2d 362, 372 (Del. 2006); *Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *12 (Del. Ch. Sept. 30, 2003); *Guttman v. Huang*, 823 A.2d 492, 506 n. 33 (Del. Ch. 2003); *Salsitz v. Nasser*, 208 F.R.D. 589, 592 (E.D. Mich. 2002). This is because a plaintiff must demonstrate that directors "breached their duty of care, not as a result of trying to do their job but still making mistakes of a gross nature, but because the directors' level of indolence was so extreme that it arose to a conscious decision to take the salary of a director while intentionally failing to discharge one's fiduciary obligations." *Teachers' Ret. Sys. v. Aidinoff*, 900 A.2d 654, 668 (Del. Ch. 2006). Accordingly, "when a board fails to act, under Delaware law, a claim will survive a motion to dismiss . . . only if the plaintiff presents well-pleaded facts to suggest a reasonable inference that

a majority of the directors *consciously* disregarded their duties over an extended period of time,"
*Shaev v. Armstrong*, No. Civ. A. 1449-N, 2006 WL 391931, at *1 (Del. Ch. Feb. 13, 2006), *aff'd,*
2006 WL 3190507 (Del. 2006) (emphasis added), and "*knew* that they were not discharging their
fiduciary responsibilities," *Stone,* 911 A.2d at 370 (emphasis added).  The required facts must be
alleged with particularity.  *See, e.g.*, *ePlus Group, Inc. v. Panoramic Commc'ns, L.L.C.*, No. 02
Civ. 7992, 2003 WL 21512229, at *2 (S.D.N.Y. July 2, 2003); *McCabe v. Foley*, 424 F. Supp.
2d 1315, 1323-24 (M.D. Fla. 2006); *Canadian Comm. Workers Indus. Pension Plan v. Alden*,
No. Civ. A. 1184-N, 2006 WL 456786, at *6-7 (Del. Ch. Feb. 22, 2006).

      To satisfy the *Caremark* standard in a case such as this, Plaintiffs' allegations
should include: (a) the part that the AIG Board played in the internal processes of collecting and
disseminating financial information; (b) how often and how long the AIG Audit Committee met,
who advised the committee, and whether the committee discussed and approved any of the
allegedly improper accounting practices; (c) which specific oversight duties the AIG Board
neglected; (d) what specific actions the AIG Board failed to take; (e) that the AIG Board had
actual or constructive notice that there was an error in AIG's disclosure relating to its subprime
exposure; or (f) why the AIG Board should have been on notice that there was an error in AIG's
disclosure relating to its subprime exposure.  *See, e.g.*, *Kenney v. Koenig*, 426 F. Supp. 2d 1175,
1182-83 (D. Colo. 2006) (interpreting Delaware law) ("Noticeably lacking from both the
plaintiffs' Amended Complaint and Response are any specific failures of the independent outside
director defendants or the Audit Committee of which they were members . . . ."); *Guttman,* 823
A.2d at 507 ("What is Not in the Complaint").

      As discussed above, Plaintiffs make no allegations specific to AIG's exposure to
the subprime mortgage market or to the board's oversight of AIG's disclosure process.  In the

absence of such allegations, or even assuming that there had been proper allegations of incorrect disclosures, "Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so." *Desimone v. Barrows*, 924 A.2d 908, 940 (Del. Ch. 2007). This Court should likewise dismiss this Complaint.[6]

## III. The Complaint Fails To State A Claim For Insider Selling

Plaintiffs' insider selling claims against Director Cohen—the only Outside Director Defendant alleged to have completed an insider sale—fail because Plaintiffs do not allege Cohen was in possession of any material, nonpublic information at the time he sold his shares. *Guttman*, 823 A.2d at 505 ("[I]t must be shown that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information.") (internal citations omitted). For all the reasons discussed under Sections I and II, above, Plaintiffs neither identify any non-public information in Defendant Cohen's possession, nor explain how such information is material. Thus, Plaintiffs' insider selling claim should be dismissed.

## IV. The Complaint Fails To State A Claim For Corporate Waste As A Matter Of Law

Corporate waste is an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be

---

[6]     Plaintiffs allege that Outside Director Defendants Sutton, Miles, and Offit have an additional degree of responsibility because of their service on the Audit Committee. This is incorrect as a matter of law. Being a member of the Audit Committee does not impose a heightened fiduciary duty. *See Rattner*, 2003 WL 22284323, at *13 (in accounting oversight cases, a director's mere membership on an audit committee during the relevant period does not suffice to create a substantial likelihood of liability); *Jones ex rel. CSK Auto Corp. v. Jenkins*, 503 F. Supp. 2d 1325, 1336 (D. Ariz. 2007) (holding that audit committee members do not have a "heightened duty to insure the accuracy and fairness of . . . financials"). The Complaint does not allege any specific facts available to members of the Audit Committee that were not available to other members of the Board.

willing to trade. *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000). Plaintiffs must plead corporate waste with particularity. *Green v. Phillips*, No. 14436, 1996 WL 342093, at *5 (Del. Ch. June 19, 1996); *Landy v. D'Alessandro*, 316 F. Supp. 2d 49, 70 (D. Mass. 2004) (applying Delaware law) ("Plaintiff has failed in his complaint to plead with particularity facts that, if taken as true, demonstrate with particularity that the challenged executive compensation was corporate waste or even create reasonable doubt that the compensation was not corporate waste.").

Plaintiffs allege that authorization of the repurchase by AIG of its own shares in February 2007 was corporate waste. First, the claim fails because it is premised on the assertion that AIG's stock was artificially inflated in February 2007 because of AIG's false and misleading statements about its exposure to the subprime mortgage market. Compl. ¶ 4. As discussed at length above, the Plaintiffs have not adequately alleged a false or misleading statement.

Second, where a majority of the board of directors of the company is disinterested in the transaction at issue, the decision to engage in the transaction is subject to the protections of the business judgment rule. *Kahn v. Roberts*, 679 A.2d 460, 466 (Del. 1996); *Andreae v. Andreae*, No. 11905, 1992 WL 43924, at *4 (Del. Ch. Mar. 3, 1992). Plaintiffs have not alleged that a majority of the board was interested in the repurchase transactions and, therefore, the business judgment rule applies. Only if the complaint adequately alleges that the board acted in bad faith can a claim be sustained. *Alidina v. Internet.com Corp.*, No. 17235-NC, 2002 WL 31584292, at *4 (Del. Ch. Nov. 6, 2002) ("The business judgment rule may be rebutted in those rare cases where the decision under attack is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.") (internal quotations omitted). Even if Plaintiffs had alleged that AIG's stock price was artificially inflated by false or misleading statements—which they have not—to overcome the business judgment rule and show

17

bad faith the Plaintiffs would have to allege that the Outside Director Defendants knew that the stock price was artificially inflated because AIG's public disclosures were false or misleading and proceeded with the transaction for some purpose other than to benefit AIG.  As discussed in Sections I and II above, Plaintiffs have not made any factual allegations that could support such a conclusion.  Therefore, Count V asserting a claim for corporate waste should be dismissed as against the Outside Director Defendants.

**V.     The Complaint Fails to State A Claim For Unjust Enrichment**

Plaintiffs asserting a claim of unjust enrichment must show that the "[D]efendants w[ere] enriched at the [P]laintiff[s'] expense and that equity and good conscience require [AIG] to recover the enrichment from the [D]efendant[s]."  *Golden Pacific Bancorp. v. F.D.I.C.*, 375 F.3d 196, 203 n.8 (2d Cir. 2004).  Plaintiffs' unjust enrichment claim is that by "their wrongful acts [detailed in Counts I – V] the Individual Defendants were unjustly enriched."  As set forth above, Plaintiffs have not alleged any wrongful acts.  Therefore, Plaintiffs' claim for unjust enrichment should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that the Court dismiss the Complaint with prejudice.

Dated:  New York, New York
   April 15, 2008

        SIMPSON THACHER & BARTLETT LLP


       By  <u>/s/ James Gamble</u>
        James G. Gamble (jgamble@stblaw.com)
        Timothy J. Cornell (tcornell@stblaw.com)
        Tamala T. Boyd (tboyd@stblaw.com)
        425 Lexington Avenue
        New York, New York  10017-3954
        Telephone: (212) 455-2000
        Facsimile:  (212) 455-2502

        *Attorneys for Defendants Marshall A. Cohen, Martin D. Feldstein, Ellen V. Futter, Richard C. Holbrooke, Frank G. Zarb, Stephen L. Hammerman, George L. Miles, Morris W. Offit, Michael H. Sutton, Fred H. Langhammer, James F. Orr, Virginia M. Rometty and Robert B. Willumstad*