UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

IN RE AMERICAN INTERNATIONAL GROUP,    :   No.  07 CV 10464 (LAP)
INC. 2007 DERIVATIVE LITIGATION

    :

-------------------------------------------------------------------x

This Document Relates To

    :

      ALL ACTIONS.

-------------------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY
## NOMINAL DEFENDANT AMERICAN INTERNATIONAL GROUP, INC.

WEIL, GOTSHAL & MANGES  LLP
767 Fifth Avenue
New York, NY 10153
212 310-8000 (Telephone)
212 310-8007 (Fax)

*Attorneys for Nominal Defendant*
   *American International Group, Inc.*

April 15, 2008

# **TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS ................................................................................ 3

    A.    The Parties ...................................................................... 3

    B.    The Alleged Wrongdoing ..................................................... 3

ARGUMENT ............................................................................................. 4

PLAINTIFFS LACK STANDING UNDER FEDERAL RULE 23.1 AND
DELAWARE LAW DUE TO THEIR FAILURE TO MAKE A PRE-LITIGATION
DEMAND ................................................................................................ 4

    A.    The Demand Requirement Serves Important Corporate Governance
        Purposes And Imposes "Heightened Pleading Standards" And
        "Stringent Requirements Of Factual Particularity" ......................... 5

    B.    Plaintiffs' Complaint Alleges An Oversight Failure Rather Than A
        Specific Board Decision, And Therefore The Need For Demand Is
        Governed By Delaware's Rales Test ........................................... 7

    C.    Plaintiffs Fail To Plead The Particularized Facts Required By Rales ............. 9

        1.    Establishing Director Liability For Failure To Monitor
            Corporate Affairs Is "Possibly The Most Difficult Theory In
            Corporation Law Upon Which A Plaintiff Might Hope To Win
            A Judgment" .......................................................... 10

        2.    The Complaint's Conclusory Allegations Fail To Overcome
            The Heavy Pleading Burden Imposed By Rales ........................... 15

    D.    The Result Is The Same Even If Aronson Governs With Respect To
        Plaintiffs' Repurchase Allegations ........................................... 20

CONCLUSION .......................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

Aronson v. Lewis, 473 A.2d 805 (Del. 1984)..........................................................5, 7, 8, 10, 17, 20

Beam v. Stewart, 845 A.2d 1040 (Del. 2004).............................................................................6, 10

Blasband v. Rales, 971 F.2d 1034 (3d Cir. 1992)............................................................................18

Brehm v. Eisner, 746 A.2d 244 (Del. 2000) ....................................................................2, 6, 7, 17

In re Bristol-Myers Squibb Derivative Litig., 2007 WL 959081 (S.D.N.Y. Mar. 30,
      2007) .................................................................................................................................4, 5

In re Career Educ. Corp. Derivative Litig., 2007 WL 2875203 (Del. Ch. Sept. 28,
      2007) ....................................................................................................................................9

In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959 (Del. Ch. 1996)...................1, 10, 11, 12

In re Citigroup Inc. S'holders Litig., 2003 WL 21384599 (Del. Ch. June 5, 2003),
      aff'd mem., 839 A.2d 666 (Del. 2003) ...........................................................................12, 13

In re Coca-Cola Enters., Inc. Derivative Litig., 478 F. Supp. 2d 1369 (N.D. Ga.
      2007), aff'd sub nom. Staehr v. Alm, 2008 WL 657865 (11th Cir. Mar. 13, 2008)................15

Dailey Income Fund, Inc. v. Fox, 464 U.S. 523 (1984)....................................................................5

Desimone v. Barrows, 924 A.2d 908 (Del. Ch. 2007).....................................................6, 12, 15, 17

Elfenbein v. Gulf & W. Indus., Inc., 590 F.2d 445 (2d Cir. 1978)..................................................18

Ferre v. McGrath, 2007 WL 1180650 (S.D.N.Y. Feb. 16, 2007)...........................................6, 15, 19

In re Ferro Corp. Derivative Litig., 511 F.3d 611 (6th Cir. 2008).......................................2, 19, 20

In re First Bancorp Derivative Litig., 465 F. Supp. 2d 112 (D.P.R. 2006)....................................15

In re Forest Labs., Inc. Derivative Litig., 450 F. Supp. 2d 379 (S.D.N.Y. 2006)......3, 9, 14, 18, 19

Grimes v. Donald, 673 A.2d 1207 (Del. 1996)..................................................................1, 2, 7, 17

Grobow v. Perot, 539 A.2d 180 (Del. 1988)..................................................................................9, 10

Guttman v. Huang, 823 A.2d 492 (Del. Ch. 2003)....................................................8, 11, 13, 14, 17

Halpert Enters., Inc. v. Harrison, 362 F. Supp. 2d 426 (S.D.N.Y. 2005) ......................................19

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

Halpert Enters., Inc. v. Harrison, 2005 WL 1773686 (S.D.N.Y. July 26, 2005)...........................14

Highland Legacy Ltd. v. Singer, 2006 WL 741939 (Del. Ch. Mar. 17, 2006)..............................20

In re IAC/InteractiveCorp Sec. Litig., 478 F. Supp. 2d 574 (S.D.N.Y. 2007) .........................9, 15

In re infoUSA, Inc. S'holders Litig., 2007 WL 2419611 (Del. Ch. Aug. 13, 2007) ......................8

Irwin v. Gemunder, 2006 WL 3366180 (E.D. Ky. Nov. 20, 2006)...............................................15

Ji v. Van Heyningen, 2006 WL 2521440 (D.R.I. Aug. 29, 2006).................................................19

Jones v. Jenkins, 503 F. Supp. 2d 1325 (D. Ariz. 2007)..........................................................15, 20

Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90 (1991)..........................................................1, 4, 5

Kamen v. Kemper Fin. Servs., Inc., 939 F.2d 458 (7th Cir. 1991)................................................18

Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726 (Del. 1988).....................................2, 18

Kenney v. Koenig, 426 F. Supp. 2d 1175 (D. Colo. 2006)............................................................15

Khanna v. McMinn, 2006 WL 1388744 (Del. Ch. May 9, 2006) ...............................................5, 6

Levine v. Smith, 1989 WL 150784 (Del. Ch. Nov. 27, 1989), aff'd, 591 A.2d 194
    (Del. 1991) .................................................................................................................................6

Levine v. Smith, 591 A.2d 194 (Del. 1991)..................................................................................2, 6

Levner v. Saud, 903 F. Supp. 452 (S.D.N.Y. 1994),
    aff'd, 61 F.3d 8 (2d Cir. 1995)...........................................................................................4, 5, 6

Lewis v. Graves, 701 F.2d 245 (2d Cir. 1983) .........................................................................17, 18

Locals 302 & 612 v. Blanchard, 2005 WL 2063852 (S.D.N.Y. Aug. 25, 2005)............................7

McSparran v. Larson, 2006 WL 2052057 (N.D. Ill. May 3, 2006) ..............................................15

In re Merck & Co. Sec., Derivative & ERISA Litig., 493 F.3d 393 (3d Cir. 2007)........................8

In re Morgan Stanley Derivative Litig., 2008 WL 820718 (S.D.N.Y. Mar. 27, 2008) ..................9

### TABLE OF AUTHORITIES
#### (continued)

Page(s)

In re Mut. Funds Inv. Litig. (In re Janus Subtrack), 384 F. Supp. 2d 873 (D. Md. 2005) ................................................................................................................16

In re Pfizer Inc. Derivative Sec. Litig., 503 F. Supp. 2d 680 (S.D.N.Y. 2007) ..............................19

Postorivo v. AG Paintball Holdings, Inc., 2008 WL 553205 (Del. Ch. Feb. 29, 2008) ...........6, 10

Rales v. Blasband, 634 A.2d 927 (Del. 1993) ......................................................7, 9, 10

Rattner v. Bidzos, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003) ...............................................14

Ross v. Bernhard, 396 U.S. 531 (1970) ....................................................................................1

Ryan v. Gifford, 918 A.2d 341 (Del. Ch. 2007) ...............................................................7

Seminaris v. Landa, 662 A.2d 1350 (Del. Ch. 1995).............................................................8

Shaev v. Armstrong, 2006 WL 391931 (Del. Ch. Feb. 13, 2006), aff'd mem., 911 A.2d 802 (Del. 2006) ................................................................................................12, 13

Spiegel v. Buntrock, 1988 WL 124324 (Del. Ch. Nov. 17, 1988), aff'd, 571 A.2d 767 (Del. 1990) ................................................................................................................18

St. Clair Shores Gen. Employees Ret. Sys. v. Eibeler, 2006 WL 2849783 (S.D.N.Y. Oct. 4, 2006) ................................................................................................................18

Staehr v. Alm, 2008 WL 657865 (11th Cir. Mar. 13, 2008) ...........................................3

Stone v. Ritter, 911 A.2d 362 (Del. 2006) ....................................................1, 5, 6, 10, 11, 12, 17

Teachers' Ret. Sys. v. Aidinoff, 900 A.2d 654 (Del. Ch. 2006).............................................12, 17

In re VistaCare, Inc. Derivative Litig., 2007 WL 2460610 (D. Ariz. Aug. 23, 2007)...................15

In re Walt Disney Co. Derivative Litig., 731 A.2d 342 (Del. Ch. 1998), aff'd sub nom. Brehm v. Eisner, 746 A.2d 244 (Del. 2000) ................................................................20

White v. Panic, 783 A.2d 543 (Del. 2001).............................................................5, 6, 7

Wilson v. Tully, 676 N.Y.S.2d 531 (N.Y. App. Div. 1st Dep't 1998) ...........................................16

In re Xethanol Corp. Derivative Litig., 2007 WL 2331975 (S.D.N.Y. Aug. 14, 2007)..................8

# TABLE OF AUTHORITIES
## (continued)

Page(s)

**Rules:**

Fed. R. Civ. P. 12(b)(6)...................................................................................................................6

Fed. R. Civ. P. 23.1...............................................................................................1, 4, 5, 6, 17, 20

## PRELIMINARY STATEMENT

Not every financial crisis merits an onslaught of reflexive litigation.

American International Group, Inc. ("AIG'), like many financial institutions, finds itself in

uncharted financial waters, confronting extraordinary conditions in the credit and stock mar-

kets and difficult accounting and valuation issues.  Under current rules of "fair value" ac-

counting (including rules which are being developed as we write this brief), AIG has been

compelled to "mark down" certain derivative instruments (credit default swaps) and record

large but unrecognized losses in current periods – losses that likely will never be realized.

Plaintiffs do not (and cannot) allege that AIG's directors and officers had a

crystal ball foreseeing the extraordinary events of the past year.  Instead, they seek – in the

name of AIG – to hold AIG directors and officers liable for supposedly failing to adequately

oversee and monitor AIG's disclosure concerning what plaintiffs call the "subprime mort-

gage crisis" – "possibly the most difficult theory in corporation law upon which a plaintiff

might hope to win a judgment."  In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959,

967 (Del. Ch. 1996), quoted in, e.g., Stone v. Ritter, 911 A.2d 362, 372 (Del. 2006).

Putting aside the utter lack of any merit to the asserted claims, plaintiffs lack

standing to bring these claims in the name of AIG under Federal Rule Civil Procedure 23.1

and the governing Delaware law.  Unlike an action a plaintiff brings on his or her own behalf

to enforce a personal claim, a shareholder derivative action is brought "'to enforce a corpo-

rate cause of action.'"  Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991) (quoting

Ross v. Bernhard, 396 U.S. 531, 534 (1970)) (emphasis in original).  "Although named a

defendant," the corporation "is the real party in interest, the stockholder being at best the

nominal plaintiff." Ross, 396 U.S. at 538.  The claim "belongs to the corporation." Grimes

v. Donald, 673 A.2d 1207, 1215 (Del. 1996). "The right to bring a derivative action does not come into existence until the plaintiff shareholder has made a demand on the corporation to institute such an action or until the shareholder has demonstrated that demand would be futile." Kaplan v. Peat, Marwick, Mitchell & Co., 540 A.2d 726, 730 (Del. 1988). "If plaintiffs do not comply with the requirements of Rule 23.1, they do not have standing to bring suit." In re Ferro Corp. Derivative Litig., 511 F.3d 611, 617 (6th Cir. 2008).

The demand requirement "implements 'the basic principle of corporate governance that the decisions of a corporation – including the decision to initiate litigation – should be made by the board of directors or the majority of shareholders.'" Kamen, 500 U.S. at 101 (citation omitted). The demand requirement "is not a 'mere formalit[y] of litigation,' but rather an important 'stricture[ ] of substantive law.'" Levine v. Smith, 591 A.2d 194, 207 (Del. 1991) (citation omitted).

Plaintiffs admit that they have not made a demand, but allege that demand is "excused." It is not, as a matter of law. Far from complying with the "stringent requirements of factual particularity" that govern allegations that demand is excused, Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000), plaintiffs simply allege that 23 AIG directors and officers – all lumped together, with no differentiation between 13 outside directors (who comprise the overwhelming majority of the board to which a demand would be made), 2 inside directors, and 8 officers who are not directors – all somehow "knew" that "AIG's portfolios were more exposed to the subprime mortgage crisis than what the Company had disclosed." Compl. ¶ 86. Exactly what they all knew, and how they all knew it, is not alleged. Nor do plaintiffs explain how this unspecified knowledge disqualifies the overwhelming majority of independent directors on AIG's board from deciding whether the prosecution of this litigation would

in fact further the interests of AIG at this time.

Legions of decisions construing Delaware law (in this and other courts) have roundly rejected the excuses for a failure to make demand plaintiffs proffer here for failing to make a demand. This Court should do the same and dismiss plaintiffs' complaint.

## STATEMENT OF FACTS

### A.    The Parties

Plaintiffs Doris Staehr and Marilyn Clark allege that they own AIG common stock. Compl. ¶¶ 9-10. AIG is a Delaware corporation. Id. ¶ 11. The 23 individuals named as defendants are alleged to be AIG directors and/or officers. Id. ¶¶ 12-34.

Plaintiffs allege that AIG's Board includes 15 directors, all of whom are named as defendants: Ms. Futter, Ms. Rometty and Messrs. Sullivan, Tse, Cohen, Feldstein, Hammerman, Holbrooke, Langhammer, Miles, Offit, Orr, Sutton, Willumstad and Zarb. Compl. ¶¶ 12-13, 22-34, 35, 95. Plaintiffs allege that only two of these 15 directors – Messrs. Sullivan and Tse – are inside, employee, management directors. Id. ¶¶ 12-13, 35.

The remaining eight individuals named as defendants – Messrs. Bensinger, Dooley, Geissinger, Habayeb, Lewis, Neuger, Schreiber and Wisner – are not directors of AIG. Compl. ¶¶ 14-21. They therefore are "not . . . relevant to determining demand futility." In re Forest Labs., Inc. Derivative Litig., 450 F. Supp. 2d 379, 381 (S.D.N.Y. 2006).

### B.    The Alleged Wrongdoing

This case arises out of what plaintiffs call "the subprime mortgage crisis." Compl. ¶ 2. Like a recently dismissed complaint by Ms. Staehr involving Coca-Cola, the complaint here is "devoid of particularized facts." Staehr v. Alm, 2008 WL 657865, at *3 (11th Cir. Mar. 13, 2008) (affirming dismissal for failure to make a demand).

Without factual support and in conclusory fashion, plaintiffs allege that the 23

directors and officers sued in this case "improperly concealed the true extent" of AIG's "exposure to the subprime mortgage crisis." Id. ¶ 2. According to plaintiffs, these AIG directors and officers "knew, consciously disregarded, were reckless and grossly negligent in not knowing or should have known" that "AIG's portfolios were more exposed to the subprime mortgage crisis than what the Company had disclosed," that "AIG's mortgage insurance business was experiencing losses as a result of the subprime mortgage crisis," and that "AIG's reported business prospects for its fiscal 2007" therefore were "inaccurate." Id. ¶ 86. As a result, plaintiffs allege, these AIG directors and officers "direct[ed] AIG to issue improper statements concerning its exposure to the subprime market crisis" and "direct[ed] AIG to repurchase over $3.7 billion worth of its own shares at artificially inflated prices." Id. ¶ 4.

Plaintiffs also allege that four defendants – one AIG director (Mr. Cohen) and three AIG non-directors (Messrs. Neuger, Schreiber and Wisner) – sold shares of AIG stock they owned "at artificially inflated prices." Id. ¶ 4; see also ¶¶ 14-16, 22, 91.

## ARGUMENT

### PLAINTIFFS LACK STANDING UNDER FEDERAL RULE 23.1 AND DELAWARE LAW DUE TO THEIR FAILURE TO MAKE A PRE-LITIGATION DEMAND

Federal Rule of Civil Procedure 23.1 requires pleading compliance with the demand requirement "with particularity." The demand requirement "clearly is a matter of 'substance,' not 'procedure.'" Kamen, 500 U.S. at 96-97. Rule 23.1 therefore "is not the source of the demand requirement but, rather is the procedural manifestation of the state law of corporate governance regarding the right of a shareholder to bring a derivative suit on behalf of a corporation." Levner v. Saud, 903 F. Supp. 452, 456 (S.D.N.Y. 1994) (Preska, J.), aff'd, 61 F.3d 8 (2d Cir. 1995); see also In re Bristol Myers Squibb Derivative Litig.,

2007 WL 959081, at *6 (S.D.N.Y. Mar. 30, 2007) (Preska, J.) ("[t]he adequacy of the

demand required under Federal Rule of Civil Procedure 23.1 is determined under the law of

the corporation's state of incorporation"); Levner, 903 F. Supp. at 456 (same principle).

### A.    The Demand Requirement Serves Important Corporate Governance Purposes And Imposes "Heightened Pleading Standards" And "Stringent Requirements Of Factual Particularity"

"[T]he right of a stockholder to prosecute a derivative suit is limited to situa-

tions where either the stockholder has demanded the directors pursue a corporate claim and

the directors have wrongfully refused to do so, or where demand is excused because the

directors are incapable of making an impartial decision regarding whether to institute such

litigation." Stone, 911 A.2d at 366-67; see also White v. Panic, 783 A.2d 543, 550 (Del.

2001) (same).

This demand requirement reflects the universally recognized "'basic principle

of corporate governance that the decisions of a corporation – including the decision to initiate

litigation – should be made by the board of directors or the majority of shareholders.'"

Kamen, 500 U.S. at 101 (quoting Daily Income Fund, Inc. v. Fox, 464 U.S. 523, 530 (1984));

see also Bristol Myers, 2007 WL 959081, at *6 ("the derivative suit impinges on the mana-

gerial freedom of directors, and one of the cardinal precepts of Delaware General Corpora-

tion Law is that the directors, rather than the shareholders, manage the business and affairs of

the corporation"); White, 783 A.2d at 550 n.18 ("'[t]he directors of a corporation and not its

shareholders manage the business and affairs of the corporation . . . and accordingly, the

directors are responsible for deciding whether to engage in derivative litigation'") (citation

omitted).  The requirement also "provide[s] a safeguard against strike suits," Aronson v.

Lewis, 473 A.2d 805, 812 (Del. 1984), "'motivated by the hope of creating settlement lever-

age through the prospect of expensive and time-consuming litigation discovery.'" Khanna v.

McMinn, 2006 WL 1388744, at *11 n.50 (Del. Ch. May 9, 2006) (citation omitted).

As a result, a motion to dismiss based on the demand requirement "is not intended to test the legal sufficiency of the plaintiff's substantive claim. Rather, its purpose is to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." Levine v. Smith, 1989 WL 150784, at *5 (Del. Ch. Nov. 27, 1989), aff'd, 591 A.2d 194 (Del. 1991). "If the derivative plaintiff fails to meet this pleading burden, the complaint must be dismissed, even if the claims appear to have merit." Ferre v. McGrath, 2007 WL 1180650, at *3 (S.D.N.Y. Feb. 16, 2007) (Delaware law).

"[H]eightened pleading standards" govern. White, 783 A.2d at 553. Plaintiffs "must comply with stringent requirements of factual particularity that differ substantially" from the pleading rules that govern most other types of cases. Brehm, 746 A.2d at 254, quoted in White, 783 A.2d at 553 n.34 and Stone, 911 A.2d at 367 n.9. "The key principle upon which this area of our jurisprudence is based is that the directors are entitled to a presumption that they were faithful to their fiduciary duties," and plaintiffs must "rebut the presumption at the pleading stage." Beam v. Stewart, 845 A.2d 1040, 1048-49 (Del. 2004) (emphasis in original). "Consequently, a plaintiff's 'pleading burden under Rule 23.1 is . . . more onerous than that required to withstand a Rule 12(b)(6) motion to dismiss.'" Levner, 903 F. Supp. at 456 (quoting Levine, 591 A.2d at 207). "[F]acts specific to each director" are required. Desimone v. Barrows, 924 A.2d 908, 943 (Del. Ch. 2007); see also Postorivo v. AG Paintball Holdings, Inc., 2008 WL 553205, at *5 (Del. Ch. Feb. 29, 2008) (dismissing complaint that "alleges nothing close to the fact-intensive, director-by-director analysis required to meet the pleading standard for demand futility").

**B.    Plaintiffs' Complaint Alleges An Oversight Failure Rather Than A Specific Board Decision, And Therefore The Need For Demand Is Governed By Delaware's Rales Test**

The Delaware Supreme Court has announced two tests for determining if demand is excused: the <u>Aronson</u> test and the <u>Rales</u> test.  In either case, only "exceptional circumstances . . . render a demand futile."  <u>Locals 302 & 612</u> v. <u>Blanchard</u>, 2005 WL 2063852, at *7 (S.D.N.Y. Aug. 25, 2005) (Preska, J.).

Where a decision made by a board of directors is challenged, the question whether demand is excused is governed by the <u>Aronson</u> test, pursuant to which "particular-ized facts" must be alleged that, if true, would create "a reasonable doubt" that "(1) 'the directors are disinterested and independent' or '(2) the challenged transaction was otherwise the product of a valid exercise of business judgment.'"  <u>White</u>, 783 A.2d at 551; <u>Brehm</u>, 746 A.2d at 253 & n.13 (both citing <u>Aronson</u>, 473 A.2d at 814).  "Reasonable doubt" requires "a reason to doubt" and cannot be "based on mere suspicions or stated solely in conclusory terms."  <u>Grimes</u>, 673 A.2d at 1217.  "Creating such a reason to doubt is a difficult feat under Delaware law."  <u>Ryan</u> v. <u>Gifford</u>, 918 A.2d 341, 352 n.23 (Del. Ch. 2007).

Where board action is not at issue, a different test, the <u>Rales</u> test, applies be-cause no business judgment has been made and thus the second prong of the <u>Aronson</u> test is inapplicable.  <u>Rales</u> v. <u>Blasband</u>, 634 A.2d 927, 933 (Del. 1993).  <u>Rales</u> thus applies "where directors are sued derivatively because they have failed to do something."  <u>Id</u>. at 934 n.9.  Under <u>Rales</u>, the court only addresses the first prong of <u>Aronson</u> – i.e., whether "particular-ized factual allegations . . . create a reasonable doubt that . . . the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand."  <u>Id</u>. at 934.

The <u>Rales</u> inquiry, however, "addresses concerns similar to the second prong

of <u>Aronson</u>" by providing that "if the directors face a 'substantial likelihood' of personal liability, their ability to consider a demand impartially is compromised under <u>Rales</u>, excusing demand." <u>Guttman</u> v. <u>Huang</u>, 823 A.2d 492, 501 (Del. Ch. 2003) (emphasis added). The required "substantial likelihood" of director liability exists only in "rare cases" where the challenged director conduct is "egregious on its face." <u>Aronson</u>, 473 A.2d at 815; <u>see also</u> <u>In re Xethanol Corp. Derivative Litig.</u>, 2007 WL 2331975, at *4 (S.D.N.Y. Aug. 14, 2007) ("only in rare circumstances where the failure to act is so egregious that the directors face 'a substantial likelihood of liability' will directors have a sufficiently disqualifying interest so as to negate the demand requirement"); <u>Seminaris</u> v. <u>Landa</u>, 662 A.2d 1350, 1355 (Del. Ch. 1995) ("[t]he particularized facts of the complaint do not describe such egregious conduct by the directors that they face a substantial likelihood of liability"). "[T]his standard is quite high" and "difficult to meet." <u>In re Merck & Co. Sec., Derivative & ERISA Litig.</u>, 493 F.3d 393, 402 (3d Cir. 2007); <u>In re infoUSA, Inc. S'holders Litig.</u>, 2007 WL 2419611, at *17 (Del. Ch. Aug. 13, 2007).

Here, plaintiffs do not allege an affirmative board decision to make false or misleading statements concerning the corporation's "exposure to the subprime market crisis" and to repurchase stock at prices that were too high. Compl. ¶¶ 2, 4. Rather, plaintiffs allege a failure to oversee corporate affairs, including an alleged failure to be properly informed concerning the corporation's "exposure to the subprime mortgage crisis," resulting in directors "caus[ing] or allow[ing]" false or misleading statements to be made, and directors authorizing a stock repurchase at "artificially inflated" prices, because the directors failed to "properly discuss and consider the Company's exposure to the subprime mortgage lending crisis." <u>Id.</u> ¶¶ 2, 64, 68-73, 75, 87, 96, 112.

<u>Rules</u> thus governs.  <u>See</u>, <u>e.g.</u>, <u>In re Morgan Stanley Derivative Litig.</u>, 2008 WL 820718, at *4 (S.D.N.Y. Mar. 27, 2008) (<u>Rules</u> governs where "isolated and conclusory references to the board's 'conceal[ment]' of, or failure to 'disclose,' . . . are insufficiently particularized to allege a specific board decision to omit the information" from public disclosure; the court noted that there were "no particularized allegations . . . that the board actively or purposefully made a decision to omit the information"); <u>In re IAC/InteractiveCorp Sec. Litig.</u>, 478 F. Supp. 2d 574, 596-98 (S.D.N.Y. 2007) (<u>Rules</u> governs allegations "that directors "caus[ed] the Company to improperly misrepresent the financial prospects of the Company and failed to correct the Company's publicly reported financial results" because "plaintiffs do not challenge a particular decision made by the board as a whole"); <u>Forest</u>, 450 F. Supp. 2d at 388, 390 (<u>Rules</u> governs allegations that directors "'authorized and/or permitted' false statements to be disseminated . . . without any particularized allegations establishing . . . that the Outside Directors had knowledge of the alleged falsity of such representations"). <u>Rules</u> also governs plaintiffs' allegations that individuals engaged in insider trading, "because this claim does not challenge an action of the board." <u>In re Career Educ. Corp. Derivative Litig.</u>, 2007 WL 2875203, at *12 (Del. Ch. Sept. 28, 2007).

### C.     <u>**Plaintiffs Fail To Plead The Particularized Facts Required By Rules**</u>

Plaintiffs have not pleaded particularized facts showing interestedness or lack of independence, as required by <u>Rules</u>.

"A director is considered interested where he or she will receive a personal financial benefit from a transaction that is not equally shared by the stockholders." <u>Rules</u>, 634 A.2d at 936.  To establish an interest that excuses demand, a shareholder "must plead particularized facts demonstrating either a financial interest or entrenchment." <u>Grobow</u> v. <u>Perot</u>, 539 A.2d 180, 188 (Del. 1988).  The complaint alleges a financial interest on the part

of only three directors:

- AIG's two management directors, Messrs. Sullivan and Tse, are alleged to receive substantial compensation from AIG (Compl. ¶¶ 12-13, 98-99), and

- one outside director, Mr. Cohen, is alleged to have sold AIG shares while "knowing" that AIG's stock price was "artificially inflated" due to AIG's "exposure to the subprime mortgage crisis" (Compl. ¶¶ 2, 4, 100).

The Court "need not analyze the allegations specifically concerning [these three directors] because they do not constitute a majority of the board." Postorivo, 2008 WL 553205, at *7 n.29. "Thus, even if the Complaint raises a reasonable doubt regarding [their] ability to consider a demand, that alone would not establish demand futility." Id.

To establish a lack of independence excusing demand, a shareholder must plead particularized facts showing that a director is dominated or controlled by or "beholden" to an individual having a financial interest. Beam, 845 A.2d at 1050; Rales, 634 A.2d at 936; Grobow, 539 A.2d at 188; Aronson, 473 A.2d at 815. Plaintiffs do not allege such facts with respect to any of AIG's 13 outside, non-management directors.

Plaintiffs also do not allege particularized facts showing that this oversight case is one of the "rare cases" where director liability "is not 'a mere threat' but instead may rise to 'a substantial likelihood.'" Rales, 634 A.2d at 936; Aronson, 473 A.2d at 815.

1.     **Establishing Director Liability For Failure To Monitor Corporate Affairs Is "Possibly The Most Difficult Theory In Corporation Law Upon Which A Plaintiff Might Hope To Win A Judgment"**

As explained above, plaintiffs' claim is an oversight claim. The leading decisions governing oversight claims are In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959 (Del. Ch. 1996), and Stone v. Ritter, 911 A.2d 362 (Del. 2006). Caremark involved a derivative action alleging that directors breached their fiduciary duties in connection with violations of law by employees that led Caremark International, Inc. to plead guilty to fraud

and to make payments totaling approximately $250 million. 698 A.2d at 960-61. Stone involved a derivative action alleging that directors breached their fiduciary duties in connection with violations of law by employees that led AmSouth Bancorporation to pay $50 million in fines and civil penalties to resolve government and regulatory investigations arising out of the failure by employees to file "Suspicious Activity Reports" required by the Bank Secrecy Act and anti-money-laundering regulations. 911 A.2d at 370-71.

Establishing director liability for failure to monitor corporate affairs is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." Caremark, 698 A.2d at 967, quoted in Stone, 911 A.2d at 372. Caremark and Stone require one of two "necessary conditions predicate" for director oversight liability: either that (1) "directors utterly failed to implement any reporting or information system or controls," or (2) directors, "having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." Stone, 911 A.2d at 370. "In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary responsibilities." Id. Accordingly:

> For the plaintiffs' derivative complaint to withstand a motion to dismiss, "only a sustained or systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exists – will establish the lack of good faith that is a necessary condition to liability."

Id. at 372 (quoting Caremark, 698 A.2d at 971).

Caremark thus "premises liability on a showing that the directors were conscious of the fact that they were not doing their jobs." Guttman, 823 A.2d at 506. This "test of liability – lack of good faith as evidenced by sustained or systematic failure of a director to exercise reasonable oversight" is "quite high" and "demanding." Caremark, 698 A.2d at 971,

quoted in Stone, 911 A.2d at 372.  A plaintiff must demonstrate "conscious torpor in the face

of duty":  that directors "breached their duty of care, not as a result of trying to do their job

but still making mistakes of a gross nature, but because the directors' level of indolence was

so extreme that it arose to a conscious decision to take the salary of a director while inten-

tionally failing to discharge one's fiduciary obligations." Teachers' Ret. Sys. v. Aidinoff,

900 A.2d 654, 668 (Del. Ch. 2006).  Accordingly, "when a board fails to act . . . a claim will

survive a motion to dismiss . . . only if the plaintiff presents well-pleaded facts to suggest a

reasonable inference that a majority of the directors consciously disregarded their duties over

an extended period of time." Shaev v. Armstrong, 2006 WL 391931, at *1 (Del. Ch. Feb. 13,

2006), aff'd mem., 911 A.2d 802 (Del. 2006).  "[T]o hold directors liable for a failure in

monitoring, the directors would have to have acted with a state of mind consistent with a

conscious decision to breach their duty of care" and "indolence . . . so persistent that it could

not be ascribed to anything other than a knowing decision not to even try to make sure the

corporation's officers had developed and were implementing a prudent approach to ensuring

law compliance." Desimone, 924 A.2d at 935.

      These principles have been applied time and time again by Delaware courts to

dismiss complaints alleging oversight failures remarkably similar to those alleged here.

      In re Citigroup Inc. S'holders Litig., 2003 WL 21384599 (Del. Ch. June 5,

2003), aff'd mem., 839 A.2d 666 (Del. 2003), involved allegations concerning Citigroup's

involvement in (i) "off-balance sheet financings allegedly done by Enron," and (ii) "arrang-

ing for favored corporate executives to get more or less guaranteed profits from 'hot' IPOs in

return for their corporation's lucrative investment banking business." Id. at *1-2.  Plaintiffs

alleged that "to the extent the director defendants were unaware" of these actions, "their lack

of knowledge resulted from their failure to assure that the Citigroup board of directors was properly informed about the company's business activities," and that the directors either "knew about (and condoned) the corrupt and illegal practices alleged or their failure to know was the product of a breach of the directors' duty of oversight." Id.

The court held that this was "a patently inadequate allegation of demand excusal." Id. at *1. The court stated that "there is no basis" in the complaint – "[d]espite its length" (80 pages) – "from which the court could possibly infer that demand is excused." Id. at *2. The court stated that the complaint "is entirely devoid of the particularized allegations of fact needed to tie" the directors sued in the case "to any of the alleged wrongdoing" and contained no "information that might support a claim either that the directors had actual knowledge of the allegedly illegal practices . . . or that the directors either knew or should have known that there were material inadequacies in the corporation's internal controls." Id.

Shaev v. Armstrong, 2006 WL 391931 (Del. Ch. Feb. 13, 2006), aff'd mem., 911 A.2d 802 (Del. 2006), another decision dismissing a complaint challenging Citigroup's dealings with Enron and WorldCom, reached the same conclusion, stating that plaintiff did not allege particularized facts showing that Citigroup's board had any "reason to believe" that the board's compliance systems "were not functioning in a basic sense" or "allege any particularized facts suggesting that the board was presented with 'red flags' alerting it to potential misconduct with regard to Enron and WorldCom." Id. at *5.

Guttman v. Huang, 823 A.2d 492 (Del. Ch. 2003), involved derivative claims based on a financial restatement. The court pointed to "What is Not in the Complaint," including "[t]he reasons why particular defendants should have been on notice of the accounting irregularities that are alleged." Id. at 498. The court held:

> The[ ] conclusory complaint is empty of the kind of fact pleading that is criti-
> cal to a <u>Caremark</u> claim, such as contentions that the company lacked an audit
> committee, that the company had an audit committee that met only sporadic-
> ally and devoted patently inadequate time to its work, or that the audit com-
> mittee had clear notice of serious accounting irregularities and simply chose to
> ignore them or, even worse, to encourage their continuation.

<u>Id</u>. at 507.  The court stated that the complaint did "not plead a single fact suggesting specific

red – or even yellow – flags were waved at the outside directors."  <u>Id</u>.

The court in <u>Rattner</u> v. <u>Bidzos</u>, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003),

likewise required demand in an action based on a financial restatement.  The court stated that

"conspicuously absent . . . are particularized facts regarding the Company's internal financial

controls . . . , notably the actions and practices of VeriSign's audit committee," such as "'. . .

how often and how long it met, who advised the committee, and whether the committee dis-

cussed and approved any of the allegedly improper accounting practices.'"  <u>Id</u>. at *12 & n.72

(quoting <u>Guttman</u>, 823 A.2d at 498).  The court stated that none of plaintiff's allegations

"(individually or collectively) pleads with particularity sufficient to sustain an inference that

the Defendant Directors were guilty of gross negligence," and "I am unable to conclude that

a majority of the Board faces a substantial likelihood of liability for failing to oversee . . .

compliance with required accounting and disclosure standards."  <u>Id</u>. at *13.

Recent federal court decisions in this District alone following this line of cases

and requiring demands in cases governed by Delaware law include:

- <u>Halpert Enters., Inc.</u> v. <u>Harrison</u>, 2005 WL 1773686, at *2 (S.D.N.Y. July 26,
  2005) (demand not excused:  147 page complaint "failed to 'plead with par-
  ticularity what obvious danger signs were ignored . . .'" and "lacks particu-
  larized allegations suggesting that any red flags were hoisted within the
  Board's field of vision") (citation omitted);

- <u>Forest</u>, 450 F. Supp. 2d at 395 (demand not excused:  rejecting allegations that
  "red flags . . . must or should have alerted the Forest Board to the problems
  facing their core product line," where "plaintiffs' allegations purporting to
  establish the Outside Directors' knowledge of any negative studies . . . or that

such studies raised red flags . . . are sorely lacking" and plaintiffs "failed to 'plead with particularity what obvious danger signs were ignored or what additional measures the directors should have taken'") (citations omitted);

- Ferre, 2007 WL 1180650, at *8 (demand not excused: the complaint "contains only the wholly conclusory allegation that the defendants failed to prevent and correct EVCI's allegedly illegal activities and improper financial statements" and "does not contain any allegations concerning any lack of reasonable information and reporting systems," and "[p]laintiff simply does not allege specific facts showing that members of the Audit Committee 'had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation'") (citation omitted);

- IAC/InterActive, 478 F. Supp. 2d at 605-06 (demand not excused: plaintiffs "failed to 'plead with particularity what obvious danger signs were ignored'" and, "[i]ndeed, plaintiffs acknowledge[d] the existence of an audit committee, which was at all times . . . charged with the responsibility of monitoring the compliance by the Company with all legal and regulatory requirements") (citation omitted).[*]

### 2. The Complaint's Conclusory Allegations Fail To Overcome The Heavy Pleading Burden Imposed By Rales

Here, plaintiffs allege nothing with respect to AIG's outside directors -- the overwhelming majority of AIG's board – that begins to approach the particularity required by Delaware law in order to show a "substantial likelihood" that directors are liable under Caremark and Stone. Plaintiffs simply allege – over and over and over again, as if repetition were a substitute for particularity and "facts specific to each director" (Desimone, 924 A.2d at 943) – that each of 23 individuals – including 13 outside directors, 2 inside directors, and 8 officers who are not directors – "knew, consciously disregarded, was reckless and grossly

---

[*] Additional decisions – all decided within the last two years – excusing demand under Delaware law in oversight cases include Kenney v. Koenig, 426 F. Supp. 2d 1175 (D. Colo. 2006), McSparran v. Larson, 2006 WL 2052057 (N.D. Ill. May 3, 2006), subsequent proceedings, 2007 WL 684123 (N.D. Ill. Feb. 28, 2007), Irwin v. Gemunder, 2006 WL 3366180 (E.D. Ky. Nov. 20, 2006), In re First Bancorp Derivative Litig., 465 F. Supp. 2d 112 (D.P.R. 2006), In re VistaCare, Inc. Derivative Litig., 2007 WL 2460610 (D. Ariz. Aug. 23, 2007), Jones v. Jenkins, 503 F. Supp. 2d 1325 (D. Ariz. 2007), In re Coca-Cola Enters., Inc. Derivative Litig., 478 F. Supp. 2d 1369 (N.D. Ga. 2007), aff'd sub nom. Staehr v. Alm, 2008 WL 657865 (11th Cir. Mar. 13, 2008).

negligent in not knowing and should have known the adverse non-public information about the business of AIG." Compl. ¶¶ 12-34; see also id. ¶¶ 44-45, 64, 67, 86, 102. The only "fact" cited in support of this proposition, however, is the "fact" that "the subprime melt-down garnered" "extensive media attention." Id. ¶ 64.

      Plaintiffs do not identify any information available to AIG's outside directors in the alleged "extensive media attention" suggesting any reason for these directors to have questioned AIG's controls, the reports AIG's board and audit committee were receiving from AIG's management and independent outside auditing firm, or public statements AIG made concerning AIG's exposure to "the subprime mortgage crisis." See In re Mut. Funds Inv. Litig. (In re Janus Subtrack), 384 F. Supp. 2d 873, 879-80 (D. Md. 2005) (Delaware law; al-leged "copious coverage" of late trading and market timing activities in "books and articles" does not excuse demand within three Janus funds absent allegations that the trustees of these funds "knew that widespread late trading and market timing activities were occurring within the Janus funds themselves"); Wilson v. Tully, 676 N.Y.S.2d 531, 536 (N.Y. App. Div. 1st Dep't 1998) (Delaware law: "[n]owhere in their 68-page complaint do plaintiffs point to any specific conduct of the individual directors or board resolution" concerning the subject matter of this suit; instead, they "rely upon conclusory allegations that the directors 'knew or reck-lessly disregarded' or 'knew or were reckless in not knowing'").

      Plaintiffs thus do not identify any information available to AIG's outside directors in the alleged "extensive media attention" that establishes the "necessary conditions predicate" to director liability:  either that (1) "directors utterly failed to implement any reporting or information system or controls," or (2) directors, "having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling

themselves from being informed of risks or problems requiring their attention." <u>Stone</u>, 911 A.2d at 370. Plaintiffs nowhere allege facts showing that "directors were conscious of the fact that they were not doing their jobs," acted with "conscious torpor in the face of duty," and made "a knowing decision not to even try to make sure the corporation's officers had developed and were implementing a prudent approach to ensuring law compliance." <u>Guttman</u>, 823 A.2d at 506; <u>Teachers</u>, 900 A.2d at 668; <u>Desimone</u>, 924 A.2d at 935.

And, plaintiffs certainly do not allege that AIG's board "lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation." <u>Guttman</u>, 823 A.2d at 507. To the contrary, plaintiffs allege that AIG <u>did</u> have an audit committee "responsible for reviewing and discussing earnings press releases and financial information and earnings guidance provided to analysts and ratings agencies" and that "participated in the preparation" of these materials. Compl. ¶ 97.

Plaintiffs' remaining allegations in support of their claim of demand futility also all have been rejected as insufficient as a matter of law, time and time again.

Demand is not excused by conclusory allegations that directors "participated in and/or permitted the wrongs alleged herein." Compl. ¶ 102; <u>see</u>, <u>e.g.</u>, <u>Brehm</u>, 746 A.2d at 257 n.34; <u>Grimes</u>, 673 A.2d at 1216 n.8; <u>Aronson</u>, 473 A.2d at 817-18. "To hold otherwise would permit plaintiffs to subvert the particularity requirements of Rule 23.1 simply by designating all the directors as targets." <u>Grimes</u>, 673 A.2d at 1216 n.8; <u>see also</u> <u>Lewis</u> v. <u>Graves</u>, 701 F.2d 245, 249 (2d Cir. 1983) ("Plaintiff unpersuasively argues that – like magic – naming all of McDermott's directors as defendants caused the demand requirement to van-

ish.  This transparent litigation tactic is like sleight of hand that is <u>slower</u> than the eye.") (emphasis in original); <u>Forest</u>, 450 F. Supp. 2d at 388 n.10 ("Delaware courts have roundly rejected the proposition that reasonable doubt as to interestedness is established simply by positing that the directors would have to sue themselves").

Demand is not excused by allegations that directors have "failed and refused to seek recovery for AIG for any of the wrongdoing alleged." Compl. ¶ 105.  <u>See</u>, <u>e.g.</u>, <u>Blasband</u> v. <u>Rales</u>, 971 F.2d 1034, 1052 (3d Cir. 1992) (under Delaware law, "a board's failure to take action, even if it is aware of wrongdoing, does not demonstrate futility"); <u>Kamen</u> v. <u>Kemper Fin. Servs., Inc.</u>, 939 F.2d 458, 462 (7th Cir. 1991) ("no state treats the directors' failure to capitulate in the lawsuit as forfeiting the firm's entitlement to demand"); <u>Lewis</u>, 701 F.2d at 249 ("charges of mere failure to take corrective action are . . . inadequate").  Even refusal of a prior demand is not enough.  <u>Kaplan</u>, 540 A.2d at 731 n.2.

Demand is not excused by allegations that "[t]he acts complained of" are violations of law or "incapable of ratification." Compl. ¶ 103.  <u>See</u>, <u>e.g.</u>, <u>Elfenbein</u> v. <u>Gulf & W. Indus., Inc.</u>, 590 F.2d 445, 451 (2d Cir. 1978) (demand not excused because "[t]he wrongs alleged . . . are a violation of law and cannot be ratified"); <u>St. Clair Shores Gen. Employees Ret. Sys.</u> v. <u>Eibeler</u>, 2006 WL 2849783, at *5-6 (S.D.N.Y. Oct. 4, 2006) ("even if [the Securities Exchange Act of 1934] has been violated, the board might reasonably determine that it is not in the best interests of the corporation to pursue derivative litigation"); <u>Spiegel</u> v. <u>Buntrock</u>, 1988 WL 124324, at *4 (Del. Ch. Nov. 17, 1988) ("[i]t is irrelevant, if true, that the facts allege a violation of law . . . ; that fact surely could not prohibit the board from exercising a judgment not to bring suit), <u>aff'd</u>, 571 A.2d 767 (Del. 1990).

The service by Messrs. Miles, Offit and Sutton on AIG's audit committee

(Compl. ¶ 97) does not excuse demand with respect to those three directors (and, even if it did, those three directors do not constitute a majority of AIG's 15 member board).  See, e.g., In re Pfizer Inc. Derivative Sec. Litig., 503 F. Supp. 2d 680, 686 (S.D.N.Y. 2007) (Delaware law; "membership on the Board's Audit Committee does not make these directors interested for demand purposes"); Ferre, 2007 WL 1180650, at *6 (Delaware law; rejecting allegation that "because . . . directors were members of EVCI's Audit Committee, they 'knew or should have known'"); Halpert Enters., Inc. v. Harrison, 362 F. Supp. 2d 426, 429 (S.D.N.Y. 2005) (Delaware law; rejecting allegation that directors "should have been aware of the scheme by virtue of their positions on supervisory board committees, such as the Audit Committee").

Allegations that directors "authorized and/or permitted" false statements (Compl. ¶ 104) also do not excuse demand.  See, e.g., Ferro, 511 F.3d at 621 (the fact that directors "signed and approved Ferro's annual reports does not mean that they had actual knowledge of the accounting errors contained within the reports"); Ji v. Van Heyningen, 2006 WL 2521440, at *9 (D.R.I. Aug. 29, 2006) (Delaware law; "[d]irectors' signatures and company statements do not go very far in showing those directors' knowing acquiescence in misrepresentations"); Forest, 450 F. Supp. 2d at 390 (Delaware law; demand not excused by "conclusory statements that the Outside Directors 'authorized and/or permitted' false state-ments to be disseminated . . . without any particularized allegations establishing . . . that the Outside Directors had knowledge of the alleged falsity of such representations").

**D.    The Result Is The Same Even If Aronson Governs With Respect To Plaintiffs' Repurchase Allegations**

The result is the same – on two grounds – to the extent plaintiffs contend that Aronson governs because they are challenging an affirmative board decision to repurchase stock at prices that the directors "knew" were "artificially inflated."  Compl. ¶¶ 4, 96.

First, Rule 23.1 requires "particularized factual allegations (not just conclusory assertions) about the defendant directors' actual knowledge." <u>Ferre</u>, 2007 WL 1180650, at *9. "[C]onclusory allegations" that directors were "aware of" or "'fully apprised' of problems . . . simply do not satisfy the particularity requirements of Delaware law." <u>Jones</u> v. <u>Jenkins</u>, 503 F. Supp. 2d 1325, 1335-36 (D. Ariz. 2007).

Second, demand will not be excused under the second prong of <u>Aronson</u> (as explained in Point B, <u>Rales</u> and the first prong of <u>Aronson</u> are identical) unless the challenged transaction is "so egregious on its face that board approval cannot meet the test of business judgment." <u>Aronson</u>, 473 A.2d at 815; <u>see also</u> <u>Highland Legacy Ltd.</u> v. <u>Singer</u>, 2006 WL 741939, at *7 (Del. Ch. Mar. 17, 2006) ("the second prong of the <u>Aronson</u> test is 'directed to extreme cases in which despite the appearance of independence and disinterest a decision is so extreme or curious as to itself raise a legitimate ground to justify further inquiry and judicial review'") (citations omitted). Repurchases of stock at prices plaintiffs do not allege were anything other than market prices, and under circumstances not involving a "substantial likelihood" of liability, as discussed in Point C, cannot possibly be "so egregious on its face that board approval cannot meet the test of business judgment." <u>Aronson</u>, 473 A.2d at 815. The allegation that later events suggest that the stock might have been worth less at the time of the repurchase than the corporation paid does not change this, because business judgments are made based on the facts known at the time the business judgment is made. "It is the essence of the business judgment rule that a court will not apply 20/20 hindsight to second guess a board's decision." <u>In re Walt Disney Co. Derivative Litig.</u>, 731 A.2d 342, 362 (Del. Ch. 1998), <u>aff'd sub nom.</u> <u>Brehm</u> v. <u>Eisner</u>, 746 A.2d 244 (Del. 2000).

## CONCLUSION

For all of the reasons stated above, this action should be dismissed.

Dated: New York, New York
April 15, 2008

WEIL, GOTSHAL & MANGES LLP

By:_____
Joseph S. Allerhand (JA-3201)
Robert F. Carangelo (RC-3162)
Kathleen Murphy (KM-6285)
767 Fifth Avenue
New York, NY 10153
212 310-8000 (Telephone)
212 310-8007 (Fax)

*Attorneys for Nominal Defendant*
*American International Group, Inc.*