UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE AMERICAN INTERNATIONAL GROUP, INC. 2007 DERIVATIVE LITIGATION | Lead Case No. 07-CV-10464 (LAP) |
| This Document Related To: | |
| ALL ACTIONS | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE OUTSIDE DIRECTORS' MOTION TO DISMISS**

SIMPSON THACHER & BARTLETT LLP
James G. Gamble
Timothy J. Cornell
Tamala T. Boyd
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Defendants Marshall A. Cohen, Martin D. Feldstein, Ellen V. Futter, Richard C. Holbrooke, Frank G. Zarb, Stephen L. Hammerman, George L. Miles, Morris W. Offit, Michael H. Sutton, Fred H. Langhammer, James F. Orr, Virginia M. Rometty and Robert B. Willumstad*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ........................................................................................................................ 2

I. PLAINTIFFS HAVE NOT PLED THE ELEMENTS OF COUNTS I AND II, THE SECURITIES FRAUD CLAIMS ........................................................................ 2

A. Plaintiffs Have Not Pled A False Or Misleading Statement Or Omission ............ 2

B. Plaintiffs Fail To Allege Scienter ........................................................................ 4

II. PLAINTIFFS' 20(A) CLAIM FAILS ................................................................................ 8

III. THE COMPLAINT DOES NOT STATE A CLAIM FOR UNJUST ENRICHMENT OR CORPORATE WASTE ........................................................................ 8

A. Rule 9(B) Applies To Plaintiffs' State Law Claims ................................................ 8

B. The Complaint Fails To State A Claim For Unjust Enrichment ........................... 9

C. The Complaint Fails To State A Claim For Corporate Waste ............................... 9

TABLE OF AUTHORITIES

Page(s)

CASES

*Alidina v. Internet.com Corp.*, No. 17235-NC 2002, WL 31584292 (Del. Ch. Nov. 6, 2002) ....9

*Bay Harbour Mgmt L.L.C. v. Carothers*, Nos. 07-1124-cv, 07-1157-cv, 2008 WL 256655 (2d Cir. June 24, 2008)....4

*Global Crossing Estate Representative v. Winnick*, No. 04 Civ. 2558 (GEL), 2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006)....5

*In re 2007 Novastar Fin. Inc., Sec. Litig*, No. 07-0139-CV-W-ODS, 2008 WL 2354367 (W.D. Mo. June 4, 2008) ....3, 7

*In re JWP Inc. Sec. Litig.*, 928 F. Supp. 1239 (S.D.N.Y. 1996)....2

*In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00 Civ. 1041, 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000);....7

*Kahn v. Roberts*, 679 A.2d 460 (Del. 1996)....9

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001)....5

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000)....6

*Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2002 WL 362794 (S.D.N.Y. Mar. 6, 2002). ....9

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C.*, No. 05 Civ. 9016 (SAS), 2007 WL 528703 (S.D.N.Y. Feb. 20, 2007)....8

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004)....8, 9

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) ....5

*Stephenson v. Cox*, 223 F. Supp. 2d 119 (D.C. Cir. 2002)....5

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, No. 06-2902-cv, 2008 WL 2521676 (2d Cir. June 26, 2008)....6, 7, 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007)....5

*Tripp v. Indymac Fin. Inc.*, No. CV07-1635-GW (VBKx), 2007 WL 4591930 (C.D. Cal. Nov. 29, 2007) ....................7

RULES AND STATUTES

15 U.S.C. §78u-4, *et seq*....................4

Fed. R. Civ. Proc. 9(b) ....................4,9

The Outside Director Defendants submit this reply memorandum in further support of their Motion to Dismiss the Complaint and in reply to Plaintiffs' Opposition To The Outside Directors' Motion To Dismiss ("Opposition" or "Opp.").[1] The Outside Director Defendants incorporate by reference and assert as if set forth fully herein all of the arguments made in the Reply Memorandum in Support of Motion to Dismiss by Nominal Defendant American International Group, Inc. ("AIG Reply"), dated July 16, 2008, in particular, and without limitation, AIG's response to Plaintiffs' arguments regarding Count III of the Complaint.

**PRELIMINARY STATEMENT**

In the Opening Brief, the Outside Directors showed that Plaintiffs have not alleged that any statement by AIG was actually false. Plaintiffs' sole response is an attempt to completely mis-state the contents of AIG's disclosures and pretend that they support Plaintiffs' claims. Nothing Plaintiffs point to supports their claim that AIG made a material misstatement.

Even if Plaintiffs had alleged a misstatement, Plaintiffs have failed to allege the necessary degree of *scienter* to support a claim. Plaintiffs argue that media reports of trouble in the mortgage market should have put the Outside Director defendants on notice that AIG's exposure to the mortgage market was larger than reported. This is nonsense. General discussions of the economy in the media do not serve as "red flags" for directors in relation to specific business issues their company faces.

Plaintiffs' arguments with respect to their unjust enrichment and corporate waste claims fail as well. First, both those claims require that Plaintiffs plead the existence of a false statement, which Plaintiffs have not done. Second, Plaintiffs have not pled that any Outside

---

[1] Capitalized terms used herein retain their meaning set forth in the Outside Directors' Memorandum of Law In Support of The Outside Directors' Motion to Dismiss ("Opening Brief").

Director had any ulterior motive or benefited directly or indirectly from the alleged wrongful conduct, which defeats both of these claims.

For all these reasons, and those stated in the Opening Brief and in the AIG Reply, the Complaint should be dismissed for failure to state a claim.

## ARGUMENT

### I. PLAINTIFFS HAVE NOT PLED THE ELEMENTS OF COUNTS I AND II, THE SECURITIES FRAUD CLAIMS

#### A. Plaintiffs Have Not Pled A False Or Misleading Statement Or Omission

Plaintiffs argue that they have pled that statements by Messrs. Sullivan, Neuger, and Lewis were false or misleading because: (i) "the Company's auditor, PWC, found 'faulty accounting may have understated the Company's losses on some holdings,'" and (ii) "the Company was required to lower the value of insurance contracts by an estimated $4.88 billion in February 2008 (rather than the $1.4 billion the company claimed in October, November and December)." Opp. at 9. However, Plaintiffs have mis-stated the contents of AIG's disclosures.[2]

Plaintiffs cite paragraph 83 of the Complaint for the allegation that PwC found "faulty accounting" that may have "understated the Company's losses on some holdings." Opp. at 9. Paragraph 83 describes AIG's February 11 disclosure. The full statement made on February 11 regarding PwC's findings is set out at page five of the Opening Brief. Nowhere does it say that AIG had used "faulty accounting." Nor does it say that AIG understated the

[2] Plaintiffs make no attempt to plead that any Outside Director made a specific false statement. Instead, Plaintiffs argue that the Outside Directors are generally responsible for statements by AIG. Plaintiffs are wrong. *See In re JWP Inc. Sec. Litig.*, 928 F. Supp. 1239, 1256 (S.D.N.Y. 1996) (press releases or statements not expressly authorized by the Board are not attributable to the Board). Plaintiffs' claims against the Outside Directors could be dismissed on this basis alone.

value of its holdings in any prior period. *See* Opening Br. at 5. The actual disclosure regarding PwC's findings does not support Plaintiffs' allegations.

Plaintiffs cite paragraph 85 of the Complaint as support for their allegation that AIG had to "lower the value of insurance contracts by an estimated $4.88 billion." Opp. at 9. But paragraph 85 of the Complaint is a quote from *The Wall Street Journal*, not from any AIG source. As described in the Opening Brief, AIG did not say on February 11, and has never said, that the Pre-November 2007 Statements or the December 5 Statements included an incorrect valuation of AIG's CDS exposure. *See* Opening Br. at 5-6. All AIG did on February 11 was clarify the pricing methodology used for the December 5 Statements by providing additional detail and then explain how certain aspects of that methodology would likely be applied in AIG's Form 10K filing. *See* Opening Br. at 5. Once again, Plaintiffs base their arguments on a misstatement of the contents of AIG's public disclosures. Simply put, Plaintiffs' statement in the Opposition that "the February 2008 announcement . . . declared in no uncertain terms, that the pre-November 2007 statements were false or made with reckless disregard for the truth," Opp. at 9-10, is utterly baseless and itself completely disregards the truth.

Further, even if AIG had stated that it had previously erred in calculating the losses on its CDS portfolio, that would not mean that the December 5 Statements were false when made. *In re 2007 Novastar Fin. Inc., Sec. Litig*, No. 07-0139-CV-W-ODS, 2008 WL 2354367, at *3 (W.D. Mo. June 4, 2008) ("The Company may have incorrectly believed it had adequate reserves, but the mere fact that those reserves eventually proved inadequate does not mean a false statement was made."). But, as discussed above, Plaintiffs have not alleged any fact—other than that AIG reported higher losses for later periods than those that had been

reported on December 5—to support a claim that the December 5 Statements were false. This is simply not sufficient to support Plaintiffs' claims.

Plaintiffs also make a conclusory statement that they have pled "particularized facts supporting the allegations" that Outside Directors made material misstatements. Opp. at 8. Not one of the paragraphs Plaintiffs cite in support of this statement alleges a specific misstatement, let alone ties it to an Outside Director.

- Paragraphs 68-77 are just lengthy recitations of AIG's earnings press releases. Compl. ¶¶ 68-77.
- Paragraph 78 is a quote from an *Associated Press* article. *Id.* ¶ 78.
- Paragraphs 65-67 and 86 recite the Plaintiffs' claims and include no factual allegations at all. *Id.* ¶ 65-67, 86.
- Paragraphs 92-106 merely contain Plaintiffs' demand futility allegations and contain no particularized factual allegations regarding the Pre-November 2007 Statements. *Id.* ¶¶ 92-106.

Accordingly, Plaintiffs have failed to plead that any Outside Director made any misstatement, and the Complaint should be dismissed as against the Outside Directors.

**B. Plaintiffs Fail To Allege Scienter**

The Complaint fails to raise even an inference of scienter, much less the strong inference of scienter required by Rule 9(b) of the Federal Rules of Civil Procedure and the PSLRA.[3] Plaintiffs must plead a strong inference of scienter by demonstrating through particularized factual allegations either (1) motive and opportunity or (2) conscious misbehavior or recklessness. *See, e.g., Bay Harbour Mgmt L.L.C. v. Carothers*, Nos. 07-1124-cv, 07-1157-cv, 2008 WL 2566557, at *1 (2d Cir. June 24, 2008). Plaintiffs have not attempted to allege or argue that any Outside Director had "motive and opportunity" and therefore must plead

[3] It is undisputed that both the PSLRA and Rule 9(b) apply to Plaintiffs' 10(b) claims. Opening Br. at 9-11; Opp. at 8, 10.

conscious misbehavior or recklessness to survive the motion to dismiss Counts I and II. *Stephenson v. Cox*, 223 F. Supp. 2d 119, 121 (D.C. Cir. 2002) ("[W]hen a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded."); *see also Global Crossing Estate Representative v. Winnick*, No. 04 Civ. 2558 (GEL), 2006 WL 2212776, at *23 (S.D.N.Y. Aug. 3, 2006).[4]

Plaintiffs concede that to be "strong," an inference of scienter must be more than merely plausible or reasonable—it must be "cogent and at least as compelling as any opposing inference of non-fraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504-05 (2007); Opp. at 10. The Complaint does not come close to meeting that standard.

Plaintiffs do not argue that the Outside Directors consciously made misstatements. Rather, they argue that Defendants' positions as board members rendered them "reckless in not knowing about AIG's subprime exposure issues." Opp. at 10-14. But the Complaint does not allege recklessness. Reckless behavior must be "highly unreasonable, representing an extreme departure from the standard of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000) (internal quotation marks omitted). The standard is more stringent where, as here, plaintiffs make no showing of "motive and opportunity." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).

To support a claim that the Outside Directors were reckless in not knowing about AIG's subprime mortgage exposure, Plaintiffs must specifically identify the reports or statements

---

4 As discussed in the Opening Brief, Plaintiffs' allegation that Outside Director Marshall Cohen sold 10,093 shares of AIG stock in late 2006 is insufficient to support a claim of motive and opportunity. *See* Opening Br. at 10-11. Plaintiffs did not address these arguments in the Opposition and, thus, concede that this claim should be dismissed. *See Stephenson*, 223 F. Supp. 2d at 121.

to which the Outside Directors had access that would have made them aware of AIG's alleged problems. *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, No. 06-2902-cv, 2008 WL 2521676, at *5 (2d Cir. June 26, 2008) (citing *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)). In *Teamsters,* plaintiffs alleged that the management of Dynex (which invests in bonds secured by mortgages on manufactured housing) was reckless because they had access to "collection data" which reflected high levels of delinquencies in the mortgages in which Dynex invested. *Id.* Plaintiffs argued that a review of the data would have revealed that Dynex had in fact been making loans to borrowers who were not credit-worthy. *Id.* The District Court agreed with plaintiffs, but the Second Circuit reversed, holding that plaintiffs had to "specifically identify the reports or statements" that would have put the Dynex senior management on notice of the lax lending standards. *Id.* The court held that plaintiffs' "broad reference to raw data lacks even an allegation that these data had been collected into reports that demonstrated that loan origination practices were undermining the collateral's performance." *Id.*[5]

The *Teamsters* logic applies even more forcefully here. Plaintiffs here have not alleged that the Outside Directors or anyone else at AIG had access to *any* information relating to AIG itself that would or should have indicated to them that AIG's subprime exposure was any greater than AIG had described in its public filings and press releases. Plaintiffs rely solely on allegations that reports in the media regarding troubles at other companies should have alerted

---

[5] Plaintiffs allege that Messrs. Sullivan, Bensinger and Tse had motive because they were trying to maintain a high stock price to "enhance their executive positions, increase the power and prestige they enjoyed as a result of their positions, and conceal their mismanagement … ." Opp. at 14. *Teamsters* flatly rejects these types of motives "possessed by virtually all corporate insiders" as a basis for *scienter.* *Teamsters*, 2008 WL 2521676, at *5. Thus, Plaintiffs have failed to state a claim as to Messrs. Sullivan, Bensinger, and Tse, much less any other individual defendant.

the AIG Board that its exposure to subprime losses was larger than management was predicting.[6] Opp. at 12. But, the AIG Board need not be clairvoyant, and "boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter." *In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00 Civ. 1041, 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000).

In *Teamsters,* the court held that Dynex's possession of actual data that would have shown that its employees were using weak lending standards was not sufficient to plead scienter because it had not been collated into reports that would have shown the specific relationship, and there were no allegations that management had reviewed the data. *Teamsters*, 2008 WL 2521676, at *5. Here, there is no allegation that anyone ever suggested a relationship between media reports of troubles at other companies and AIG's exposure. Nor is there any allegation that any individual defendant – much less any Outside Director – reviewed any of the specific articles Plaintiffs cite. It is simply not possible to conclude on the basis of Plaintiffs' allegations that "reckless disregard" is at least as compelling as the competing inference that AIG was "simply unable to shield [itself] as effectively as [it] had anticipated from the drastic change in the housing and mortgage markets." *Indymac*, 2007 WL 4591930, at *4.[7] Accordingly,

---

6 Other courts have recently held similar allegations insufficient to meet the heightened pleading standard Plaintiffs face. *See, e.g., Tripp v. Indymac Fin. Inc.*, No. CV07-1635-GW (VBKx), 2007 WL 4591930, at *3-4 (C.D. Cal. Nov. 29, 2007) (holding that "[p]laintiffs' allegations . . . that, despite the onset of the downturn in the national housing and mortgage markets, Defendants maintained that they were well-positioned, contrary to other players in the markets" amounted to a "mismanagement case" and not a "fraud case"); *Novastar*, 2008 WL 2354367, at *4.

7 Other competing inferences, which are also more compelling than those Plaintiffs ask the Court to draw, are: (i) AIG appropriately managed its business based on its own internal reporting and decision mechanisms rather than reacting to outside news reports that discussed other companies; (ii) AIG had full confidence in its own internal analysis of its sub-prime exposure despite the news articles; and/or (iii) because AIG's business is

Plaintiffs have failed to plead scienter against any individual defendant – much less any Outside Director. *See, e.g., Teamsters*, 2008 WL 2521676, at *6.

## II. PLAINTIFFS' 20(A) CLAIM FAILS

It is undisputed that control liability fails absent a primary violation of the federal securities laws. Opening Br. at 13; Opp. at 15. As discussed above and in Defendants' Opening Brief, Plaintiffs fail to allege a primary violation of the security laws.

## III. THE COMPLAINT DOES NOT STATE A CLAIM FOR UNJUST ENRICHMENT OR CORPORATE WASTE

### A. Rule 9(B) Applies To Plaintiffs' State Law Claims

Plaintiffs assert that Rule 9(b) does not apply to breach of fiduciary duty claims. Opp. at 6-7. Plaintiffs are wrong. Because Plaintiffs' state law causes of action are grounded in fraud, the heightened pleading standards of Rule 9(b) apply to their state law claims.[8] *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C.*, No. 05 Civ. 9016 (SAS), 2007 WL 528703, at *6 (S.D.N.Y. Feb. 20, 2007) ("Because plaintiffs assert fraud as well as a fraud-based breach of fiduciary duty claim against ICSL, the heightened pleadings standards of Rule 9(b) apply to both common law claims."). Even the primary case Plaintiffs cite to support their assertion that Rule 9(b) does not apply here recognizes that Rule 9(b) applies to ***all*** averments of fraud as long as the fraud is integral to the breach. *See Official Comm. of*

---

fundamentally different than those of the mortgage originators or securitizers discussed in most of the cited articles, such articles provided no reason to conduct further analysis.

8 This Complaint is replete with allegations of fraud. Compl. ¶¶ 2, 4, 44-48, 86, 91, 98-102, 108, 111, 119, 125-126. Simply put, the "wording and imputations of the complaint are classically associated with fraud." *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (fraudulent wording includes: "inaccurate *and* misleading;" "*untrue* statements of material facts" and "materially *false* and *misleading* written statements") (emphasis in original). And even if proof of fraud is not necessary to state a certain claim, "claims that do rely upon averments of fraud are subject to the test of Rule 9(b)." *Id.* at 171.

*Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2002 WL 362794, at *8 (S.D.N.Y. Mar. 6, 2002). Though Plaintiffs say they "need not show that the Outside Directors intended to defraud AIG in order to establish liability for breach of fiduciary duty, waste, or unjust enrichment," Opp. at 7, they allege no other basis for liability on those claims. Because Plaintiffs' breach of fiduciary duty, corporate waste, and unjust enrichment claims are based on allegations of fraudulent behavior, Rule 9(b) applies. *See Rombach*, 355 F.3d at 171-72.

**B. The Complaint Fails To State A Claim For Unjust Enrichment**

Plaintiffs fail to meet even the notice pleading requirements of Rule 8, let alone Rule 9(b)'s heightened pleading requirements, which apply to Plaintiffs' fraud-based unjust enrichment claim. The Complaint asserts that all Defendants were unjustly enriched by "substantial compensation" and because they profited from stock sales at "inflated prices." Opp. at 18. However, none of the Outside Directors are alleged to have received "substantial compensation," and though one Outside Director Defendant—Defendant Cohen—is alleged to have sold AIG stock, Plaintiffs fail to allege that his sale was improper. *See supra*, note 4. Thus, the Complaint fails to allege how or why the AIG Board was unjustly enriched.

**C. The Complaint Fails To State A Claim For Corporate Waste**

Plaintiffs fail to properly address Defendants' corporate waste argument. Plaintiffs do not – and cannot – deny that a majority of the AIG directors were disinterested in AIG's February 2006 stock repurchase program. Thus, the decision is subject to the business judgment rule. *Kahn v. Roberts*, 679 A.2d 460, 466 (Del. 1996). To overcome the business judgment rule, Plaintiffs must allege that the Outside Directors knew AIG's stock price was artificially inflated and proceeded with the transaction for some purpose other than to benefit AIG. *Alidina v. Internet.com Corp.*, No. 17235-NC 2002, WL 31584292, at *4 (Del. Ch. Nov. 6,

2002). As discussed above, the Complaint lacks any allegations that show that the Outside Directors knew AIG's stock price was artificially inflated. Further, Plaintiffs have made no allegation that the Outside Directors derived or could have derived any benefit from the repurchase of AIG's shares at an inflated price. Accordingly, Plaintiffs have failed to state a claim for corporate waste.

**CONCLUSION**

For all the reasons stated herein and in the Outside Directors' Opening Brief, the Complaint should be dismissed with prejudice and without leave to replead.

Dated: New York, New York
July 16, 2008

SIMPSON THACHER & BARTLETT LLP

By /s/ James G. Gamble

James G. Gamble (jgamble@stblaw.com)
Timothy J. Cornell (tcornell@stblaw.com)
Tamala T. Boyd (tboyd@stblaw.com)
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Defendants Marshall A. Cohen, Martin D. Feldstein, Ellen V. Futter, Richard C. Holbrooke, Frank G. Zarb, Stephen L. Hammerman, George L. Miles, Morris W. Offit, Michael H. Sutton, Fred H. Langhammer, James F. Orr, Virginia M. Rometty and Robert B. Willumstad*